## Thompson v. Southeastern Pennsylvania Transportation Authority

*Ronald Ziegler*, for plaintiff.
*John Carroll*, for defendant.

WRIGHT, *J.*, March 1, 1978 — This action arises out of an accident occurring on December 12, 1968, involving Emily Thompson who suffered a fall on premises owned and maintained by defendant,

Southeastern Pennsylvania Transportation Authority.

It appears that about 5:00 a.m. on the above date, Mrs. Thompson fell while descending the stairs of a subway station. There was evidence that she slipped on a piece of paper or trash. She was taken by the police to the hospital and treated for abrasion of the right knee and laceration of the left shin. Subsequent out-patient visits were made until January 15, 1969, when it was noted in her hospital record that the wounds on her legs were "almost all healed." She was later seen by a number of physicians: Dr. Hinkson on February 5, 1969, who observed tender scabs on both legs; Dr. DiSilvestro on March 14, 1969, who noted an unhealed two-inch uninfected laceration on the left shin and moderate swelling of the right knee. On June 10, 1969, she was seen by Dr. David Naide, who reported seeing three ulcerated sores on the right leg which he diagnosed as a traumatic infected ulcer of the right leg. She returned to the hospital in August 1969. In January 1970, while in the hospital, she bumped her left leg on a wheel chair and developed an ulcerated sore which resulted in her death on May 3, 1970.

A hospital death certificate gives the immediate cause of death as pneumonia due to infected ulcer of the left leg with sepsis due to hypertensive arteriosclerosis. A later death certificate issued by the medical examiner's office lists the cause of death as "cardiac arrest due to myocardial infarction." The medical history was submitted to the jury through the testimony of Dr. Edward Polin, who had never seen or treated the deceased.

The jury returned a verdict for plaintiff in the amount of $34,223.85, apparently convinced of the

negligence of defendant but concluding that the injuries suffered in the accident did not cause decedent's death. Defendant filed motions for judgment n.o.v. and for a new trial alleging that there was no proper party plaintiff to maintain this action; that the medical bills of the deceased should not have been admitted into evidence and that the testimony of Dr. Polin should have been stricken.

We address ourselves first to the issue of the existence of a proper party plaintiff or, as stated by defendant, whether there was a viable case before the court. The procedural history indicates that a complaint alleging this accident was filed on August 5, 1970, on behalf of Cecil and Emily Thompson, husband and wife, and docketed as of August term, 1970, no. 610. Attached to this complaint was an affidavit signed by Emily Thompson and dated August 3, 1970. On August 17, 1970, present counsel entered his appearance on behalf of defendant. Plaintiffs contend that the affidavit was signed by Mrs. Thompson before her death on May 3, 1970, although the notary seal affixed thereto is dated August 3, 1970.

The record of that action discloses that on April 22, 1971, the following stipulation approved by the Honorable Ned Hirsh was entered on the docket in the office of the prothonotary: "Stipulation that the caption be amended to read 'Cecil Thompson, individually and as Administrator of the Estate of Lilian C. Thompson v. Southeastern Pennsylvania Transportation Authority'. (Hirsh, J.)."

On April 30, 1971, a praecipe to issue a summons in trespass was filed under the caption Cecil Thompson, Administrator v. Southeastern Transportation Authority and docketed as April term, 1971, no. 4759. Evidently no service was made by

the sheriff and a praecipe to re-issue the summons was filed on April 13, 1972. Defendant was served on April 24, 1972.

In July 1972, defendant filed a rule on plaintiff to file a complaint within 20 days or suffer judgment of non pros. Apparently in response to this plaintiffs on July 9, 1974, filed a petition requesting that the complaint filed as of the August term, 1970, no. 610, be treated as the complaint in the April term, 1971, no. 4759, action. The petition also requested consolidation of the two actions. This petition was neither answered nor contested by defendant. An order was then entered by Judge Hirsh on July 9, 1974, consolidating the two actions, and directing (b) "That the complaint in trespass originally filed in Court of Common Pleas, August term, 1970, no. 610, is proper for the purpose of consolidated actions (c) and that the complaint no. 610, August term, 1970, as consolidated be amended in accordance with Exhibit A."

Thereafter on December 3, 1974, plaintiffs filed a petition to amend the caption. An order was entered amending the caption to read Richard O. Thompson, Administrator d.b.n. of the Estate of Emily Thompson, a/k/a Lillian E. Thompson, a/k/a Lillian C. Thompson, a/k/a Lilian C. Thompson, Deceased and Richard O. Thompson, Administrator of the Estate of Cecil Thompson, a/k/a Cecil Armstrong Thompson, Deceased and Richard O. Thompson, Administrator d/b/n of the Estate of Emily Thompson, a/k/a Lillian E. Thompson, a/k/a Lillian C. Thompson v. Southeastern Pennsylvania Transportation Authority.

The stipulation herein was approved by the court on April 22, 1971, more than two years after this accident of December 1968, and slightly less than

one year after decedent's death on May 3, 1970.[1] Generally speaking, if no action is started within two years of an accident in this Commonwealth the statute of limitations if properly pleaded would bar recovery. Pennsylvania Rule of Civil Procedure 1030 provides that the defense of the statute of limitations shall be pleaded in a responsive pleading under the heading "New Matter." Here defendant filed no affirmative or responsive pleadings. It did nothing until the time of trial when it sought to raise the issue of no "viable case" before the court based on the filing of the complaint after plaintiff's death. Defendant seeks to excuse this inaction on his part alleging (in its memorandum): "Defendant, unaware that plaintiff had died before the ac-

1. Pa.R.C.P. 1033 and 2203.

"Rule 1033. Amendment.

"A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, correct the name of a party or amend his pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An amendment may be made to conform the pleading to the evidence offered or admitted." Adopted June 25, 1946, effective January 1, 1947.

"Rule 2203. Procedure to Remove Plaintiff.

"(a) Any person entitled by law to recover damages in an action for wrongful death may petition the court in which an action for such wrongful death is pending to remove the plaintiff and to substitute as a new plaintiff any person entitled by law to recover damages in the action or a personal representative of the decedent.

"(b) After hearing, of which due notice shall be given to the plaintiff in the action and to all persons entitled by law to recover damages, the court may remove the plaintiff and order the substitution prayed for, if it deems the same advisable."

tion was begun and unaware that the statute had run on her claim, agreed to the substitution which was approved by the court." With this we agree. This is precisely why defendant is in this position. It was unaware of important elements of its case and thus slept on its rights.

Defendant has cited Thompson et al. v. Peck, 320 Pa. 27, 181 Atl. 597 (1935), and Casner v. Fisher, 22 D. & C. 2d 1 (1960), where substitution for a deceased party was refused after the running of the statute of limitations. We have examined these cases and find them inapposite as in each case the substitution was timely and properly opposed by the adversary. We believe the case at bar to be governed by Smith, Admr. v. Penna. R.R., 304 Pa. 294, 156 Atl. 89 (1931). There counsel for the parties filed a stipulation after the statute of limitations permitting a substitution of plaintiffs. The court stated at page 296: ". . . When the stipulation was filed the one year limitation on the right to bring suit for death in Pennsylvania by which this suit was governed (Rosenzweig v. Heller, supra [302 Pa. 279]) had expired and, even if the amendment was one that in general could not be made thereafter, yet by reasonable construction the stipulation amounted to an implied consent thereto. An agreement will, if possible, be construed so as to be effective. Here, the only way it can be of any value is by holding that under the stipulation plaintiff may amend both the title of the case and his statement so as to permit a trial upon the merits. There was no reason for entering into the stipulation except to permit plaintiff to correct the record so that a proper trial might be had; yet, without pleading the New Jersey statute, no such trial could take place. Where the action is

based upon a foreign statute, the existence of the statute must be alleged and proved: 5 Enc. of Pleading and Practice 867; 8 Am. & Eng. Enc. of L. (2 ed.) 881; 17 C.J. 1283. It is unthinkable that defendant's counsel intended to permit plaintiff to be properly named upon the record and then exclude all proof of the accident because of the failure to set up the New Jersey statute. Unless the amendment could be made, filing the stipulation was an idle gesture, which we cannot assume was the intent of counsel.

"We agree with the dissenting opinion in the trial court that the stipulation amounted to an implied waiver of the fact that the statute of limitations had run; if so, the amendment should of course have been allowed. The statute of limitations is for the benefit of the defendant and may be waived (see 37 C.J. 721), and this may be by conduct inconsistent therewith."

Our holding here is consonant with the above quotation.

Defendant next alleges that the medical bills of decedent should not have been admitted in evidence. We dismiss this contention summarily as the cases in this Commonwealth are legion that hold hospital records are admissible to show the fact of hospitalization, the costs for same, the treatment prescribed, and the complaints and symptoms stated by the patient: Jumper v. Jumper, 240 Pa. Superior Ct. 99, 362 A. 2d 411 (1976). Further, it has been the law in this Commonwealth that an opinion stated in a hospital record would be competent where it appears that it is necessary to rely on it, e.g., where the physician who gave the opinion is well qualified but unavailable for trial.

The private records of a physician are admissible on the same basis.

A similar conclusion is reached regarding the testimony of Dr. Polin who never observed nor treated the deceased. Obviously this class of testimony is not entitled to much weight and is of particularly low grade: Girsh Trust, 410 Pa. 455, 189 A. 2d 852 (1963); but as with all expert testimony its weight is for the jury. However, the testimony is clearly admissible. An expert witness may express an opinion based on the testimony of another expert: Gyulai v. Prudential Insurance Co. of America, 135 Pa. Superior Ct. 73, 4 A. 2d 824 (1938).

We have directed plaintiff to submit a remittur in the sum of $13,000, reducing the verdict to $21,233.85. This having been done, we deny defendant's motions for judgment n.o.v. and for a new trial.