## Jumper, Appellant, *v.* Jumper.

100

Submitted September 12, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*John McCrea, III,* and *McCrea & McCrea,* for appellant.

*John H. Broujos* and *Taylor P. Andrews,* for appellee.

OPINION BY VAN DER VOORT, J., April 22, 1976:

On January 29, 1971, the appellant filed a complaint in divorce against his wife of almost twenty-eight years.[1] The grounds for divorce were indignities, and appellant averred that his wife was not an incompetent.[2] Upon

---

1. Date of marriage was February 6, 1943.
2. "The Divorce Law," Act of 1929, May 2, P.L. 1237, §10(f), 23 P.S. §10(f).

petition of appellee's attorney, and for purposes of proceeding, a guardian ad litem was appointed to represent her because of an April 10, 1972, ajudication of incompetency. Appellee then answered the complaint, admitting appellant's allegation of competency and generally denying the allegation of indignities. On July 12, 1973, appellant filed a bill of particulars wherein he alleged that certain difficulties developed from three years after their marriage and continued until 1964, when they separated, which difficulties established a course of conduct by appellee of contumely and hatred from appellee to appellant and their children. No answer was filed, nor is one necessary.[3] A master was appointed to hear testimony, and testimony was heard in two parts, the master believing that the first session should be continued until such time as appellee's sanity or hopeless insanity could be established.[4] The lower court remanded for further proceedings and fact-finding, pointing out that the case was structured on "indignities", not on an allegation of lunacy (see "The Divorce Law", *supra*, §53), and further pointing out that the posture of this case could permit the use of mental incompetence only as a defense, which if proved, would not allow a fact-finding of indignities. Citation was made by the lower court to *Boggs v. Boggs*, 221 Pa. Superior Ct. 22, 289 A.2d 479 (1972). The second hearing session was held; no new substantive testimony was presented; and a second master's report resulted wherein the master found as fact that "the acts complained of by the plaintiff as constituting indignities were committed while the defendant suffered mental derangement or mental illness". The recommendation for dismissal of the action in divorce was accepted by the lower court, which on

---

3. Pennsylvania Rule of Civil Procedure 1128(e).

4. A master's report and exceptions thereto were properly filed, placing the master's opinion as to the need for a continuance before the lower court.

April 16, 1975, dismissed appellant's exceptions to the report of the master and dismissed the complaint in divorce. It is this Order which is the subject of the instant appeal.

Of initial concern to us is whether the defense of insanity was properly before the master; appellee in her answer to the complaint admitted competency at the time of the filing of the complaint and generally denied indignities, the grounds alleged for divorce. This appears to be an inconsistency. However, we believe that in the circumstances of this case appellee's defense must not be prejudiced by her guardian's inattention to the possible implications of "admitting" appellant's averment of competency. Our Rules of Civil Procedure, at No. 1129, permit a general denial, and this appellee posited to appellant's averment of "indignities". Therefore, we hold that a sufficient denial was proposed, to permit appellee to develop properly her defense at the hearing.

Appellant first challenges this defense, arguing that appellee's expert's testimony should have been excluded as irrelevant, and records regarding appellee's hospitalization excluded. As an employee of the Harrisburg Hospital Mental Health and Mental Retardation Center, one Dr. R. H. Coronado, a psychiatrist, had occasion to examine appellee as a patient at the Harrisburg State Hospital. He met with appellee on July 24, and August 2, 1975, reviewed her history, discussed her medical condition at staff meetings, and concluded that appellee was a *manic-depressive psychotic*. Based upon his study of appellee's history, he opined that this diagnosis related back to the period in question in the divorce suit, but not necessarily to the time when he interviewed appellee. Appellant argues against the admissibility of this testimony because it was not accompanied by the reports relied upon by the psychiatrist or by the testimony of others who observed appellee during the time in question. In *Commonwealth v. Thomas*, 444 Pa. 436, 445, 282 A.2d 693, 698 (1971),

our Supreme Court adopted as the law of the Commonwealth the limited rule that a medical witness may express an opinion "based, in part, upon reports of others which are not in evidence, but which the expert customarily relies upon in the practice of his profession". This is the position of reason when, as here, a condition is alluded to which likely has existed over a long period, and those who have personally observed the patient may presently be impossible to garner as witnesses, but who have recorded their observations at the time they were made. It is clear that Dr. Coronado's conclusions as to appellee's condition were grounded upon not only these reports, but also his conversations with appellee and his discussions with others on the staff who had observed and/or treated appellee during her hospitalizations. The testimony of the psychiatrist is admissible.

Appellant further challenges admission into evidence of the above-referred hospital records. Rules regarding such evidence have been liberalized of late. Such records are admissible to show hospitalization, treatment, and stated symptoms. *Commonwealth v. Mobley*, 450 Pa. 431, 434, 301 A.2d 622 (1973). Further, we disagree with appellant's proposition that these records, showing hospitalization for certain illnesses as manifested by stated symptoms, cannot support the inference that at the time of this hospitalization, the patient's conduct was in fact reflective of the mental illness or incapacity which required the given treatment. The lower court stated that "from the testimony it appears that the alleged indignities occurred around the same time the wife was hospitalized for mental illness". If the lower court, from this and other evidence, inferred, as appellant alleges, that appellee's actions were a product of the treated mental illness, we would not find fault with this conclusion.

Having held that the above testimony and evidence were properly admitted, we shall now address the substantive question of whether appellant proved his

allegation of indignities. We have reviewed the entire record and conducted an independent review of the facts. *Eifert v. Eifert*, 219 Pa. Superior Ct. 373, 375, 281 A.2d 657 (1971). We find that appellee has presented sufficient evidence of her mental illness at the time the alleged indignities occurred. When a spouse's conduct is affected by mental or emotional disturbance, the spouse cannot be held to have offered that course of conduct cognizable as "indignities". *Boggs v. Boggs, supra.* When a spouse suffers under mental incapacity, "she then is mentally incapable of such deliberated wilfulness and maliciousness essential to procuring a divorce on the grounds [of indignities]...." *Castner v. Castner*, 159 Pa. Superior Ct. 387, 391, 48 A.2d 117 (1946). Our study of appellant's testimony does not offer to us any insight into the sanity of appellee. While we agree with appellant in that *Boggs, supra*, does not shift to a plaintiff the burden of proof of sanity, a plaintiff must make out a case of indignities not caused by mental disturbance. In this case, we do not find that appellant has proved such a dichotomy. The actions of appellee to which he testified- which actions he alleges to be "indignities" - parallel to a great degree the defense testimony and evidence as to these same actions being symtoms of mental illness requiring hospitalization. We find as did the lower court and the master that there is ample evidence to support the finding of fact that appellee's conduct in the time in question was a product of mental illness and disorder and did not constitute "indignities" which would be grounds for divorce.

Order affirmed.

HOFFMAN and PRICE, JJ., concur in the result.

DISSENTING OPINION BY SPAETH, J.:

The conduct of appellee in this case would have clearly entitled appellant to a divorce on the ground of indignities if the defense of mental illness had not been raised. The majority finds, however, that appellee's

conduct was a "product of mental illness and disorder" (Majority opinion at p. 104), and therefore affirms the lower court's order dismissing appellant's complaint in divorce. I cannot agree with this disposition.

First, the testimony of appellee's expert witness, a psychiatrist, though admissible, was most unsatisfactory. Although the psychiatrist properly relied on the reports of others involved in treatment of appellee, he himself spent no more than one hour with appellee. More important, his testimony was inconclusive. He diagnosed appellee as having a manic-depressive psychosis, based on certain enumerated symptoms, such as wanting to walk rather than ride in a car, inability to sleep, poor money management, and having automobile accidents. Upon cross-examination, however, he admitted that most of these symptoms were compatible with normal behavior.

Second, assuming that appellee's mental disorder was established, it is not clear that the lower court reached the legally correct result. The court applied the test from *Boggs v. Boggs*, 221 Pa. Superior Ct. 22, 31, 289 A.2d 479, 483 (1972): if the spouse's mental disturbance "significantly contributes to her offensive behavior," her conduct may be excused. Under that test, the court may arguably have reached the correct result. However, had the court applied the test set forth in the later case of *Dougherty v. Dougherty*, 235 Pa. Superior Ct. 122, 339 A.2d 81 (1975), the result may very well have been different. That case holds that conduct is not excusable "unless legal insanity has intervened ... or recognizable and defined disease has *usurped the will.*" *Id.* at 130, 339 A.2d at 85 (emphasis supplied). The court, it seems to me, would have been hard-pressed to find any evidence that appellee's will had been usurped.

Justice is not served when the result turns on which of two inconsistent appellate cases the lower court happens to follow. For that and other reasons, I suggest in *Steinke v. Steinke*, 238 Pa. Superior Ct. 74, 83, 357

A.2d 674, 678 (concurring opinion of SPAETH, J.) (1976), that the following uniform standard be used in all indignities cases where mental illness is offered as a defense: whether under all of the circumstances, including the defendant's mental disorder, it would be just to hold the defendant accountable for his misconduct. *Id.* at 99-100, 357 A.2d at 687.[1] I would therefore remand this case to the lower court to apply this standard.

In making its decision on remand, one circumstance the court would consider is appellee's ability to care for herself should a divorce be granted. If appellee is able to care for herself, that circumstance would weigh in favor of holding her accountable for her destruction of the marital relationship. If, however, she cannot care for herself, that would not necessarily mean that a divorce should not be granted. The court would then turn to Section 48 of the Divorce Law,[2] Act of May 2, 1929, P.L. 1237, §48, added Sept. 22, 1972, P.L. 880, No. 202, §2, 23 P.S. §48, which provides:

> "In case of the application of a spouse for divorce from a spouse who is insane or suffering from serious mental disorder, the court, or a judge thereof to whom the application is made, shall have the power before granting the divorce to decree an allowance for the support of the defendant spouse in such amount as it may direct. The allowance herein provided may be subsequently adjusted to conform to changed conditions."

If the court determined that appellee is presently

---

1. This standard was derived from *United States v. Brawner*, 471 F. 2d 969, 1010 (D.C. Cir. 1972) (dissenting opinion of BAZELON, C.J.), and from *Commonwealth v. Woodhouse*, 401 Pa. 242, 264, 164 A.2d 98, 109 (1960) (dissenting opinion of BOK, J.). *Also see Commonwealth v. Simms*, 228 Pa. Superior Ct. 85, 97, 324 A.2d 365, 379 (1974) (concurring opinion of SPAETH, J.).

2. This case, like that of *Lyall v. Lyall*, 240 Pa. Superior Ct. 649, 361 A.2d 367 (1976), presents the type of situation that Section 48 was specifically designed to alleviate.

suffering from a serious mental disorder, the court could grant appellee an adjustable permanent allowance. With appellee's needs thus met, the court might then consider it just to grant appellant a divorce.[3]

---

3. It is interesting to note that the testimony of appellee's psychiatrist indicates that appellee's contest of the divorce is related to the issue of financial support.

"Q. Were either of these visits to her made with her appearance at the divorce hearing and your testimony at the hearing in mind?

A. That was when we discussed with her that I received a letter from Mr. Harker regarding her divorce and her contest of the divorce because she does not want to lose any financial support.

Q. She understood at that time it was important to contest the divorce because to lose it would mean the loss of support payments?

A. Yes, she was much concerned about that.

Q. That is a fairly astute understanding by her isn't it?

A. I think she understood the situation." (N.T. 60).