368 A.2d 754

Angelo A. BASCELLI, Administrator of the Estate
of Michael J. Bascelli, Deceased, Appellant,

v.

Jean BUCCI and Maier's Bakery Corporation.

Richard D. GERHART

v.

Jean BUCCI, Appellant.

Superior Court of Pennsylvania.

Argued March 18, 1976.

Decided Dec. 15, 1976.

348

Richard A. Bausher, Reading, with him Stevens & Lee, for appellant at No. 76.

Arnold M. Kessler, Philadelphia, for appellant at No. 85.

David M. Kozloff, Wyomissing, with him Eves & Kozloff, Wyomissing, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge:

The litigation resulting in this appeal came about following an intersectional accident between a tractor-trail-

er and a Volkswagen. The estate of Michael J. Bascelli, who was a passenger in the Volkswagen, instituted a trespass action in the court below against Jean Bucci, the driver of the Volkswagen, and Maier's Bakery Corporation [hereinafter referred to as "Maier"], the owner of the tractor-trailer and the employer of its driver. The driver of the tractor-trailer, Richard D. Gerhart, similarly brought an action in trespass against Jean Bucci. The cases were consolidated for trial before a jury. At the conclusion of the proceedings, the jury returned a verdict in favor of the Bascelli estate against Bucci alone for $25,000.00 (no verdict for the estate was returned against Maier) and in favor of Gerhart against Bucci again in the sum of $25,000.00. The Bascelli estate has appealed claiming that the verdict which found Maier free of negligence was against the weight of the evidence, that the lower court erred in its charge to the jury, and that the verdict of $25,000.00 was inadequate. In her appeal, Jean Bucci has argued that the lower court should have found Gerhart, the driver of the tractor-trailer, guilty of contributory negligence as a matter of law, that the verdict was against the weight of the evidence, and that the lower court erred in its charge to the jury.

The first and most difficult issue we will consider is the alleged negligence of the driver of the tractor-trailer, Richard Gerhart. In dealing with this issue we must carefully review the relevant facts leading up to the accident. An excellent description of them appears in the opinion of the court below:

"The evidence revealed that the accident in question occurred on December 24, 1970 at approximately 1 a. m. at the intersection of Routes 82 and 422 East in Exeter Township, Berks County. A collision took place between a Volkswagen automobile and a tractor-trailer. Plaintiff's decedent was a passenger in the Volkswagen operated by Bucci. Gerhart was the driver of the tractor-trailer and was then an employee of

Maier's acting within the scope of his employment. Route 422 eastbound is a one-way two laned highway approximately twenty-two (22) feet wide. Route 82 is a two-way highway north and south and is also approximately twenty-two (22) feet wide. The highways form an intersection where the paved portions of the roads overlap. The intersection is controlled by overhanging traffic signals which are located over Route 422 at the eastern portion of the intersection controlling eastbound traffic, and over Route 82 at the northern portion of the intersection controlling northbound traffic and southbound traffic. Signals controlling the eastbound lanes of Route 422 were flashing yellow and signals controlling the northbound and southbound lanes of Route 82 were flashing red. The roads were wet and it was raining. Visibility was good. The headlights of the tractor and trailer clearance lights were lit. Immediately prior to the accident, Bucci was traveling south on Route 82 and Gerhart was traveling east in the right hand lane of Route 422. At a distance of approximately three blocks from the intersection Gerhart observed cross traffic. He released his foot from the accelerator slowing his speed from approximately 40 m. p. h. and proceeded at approximately 35 to 38 m. p. h. The posted speed limit on Route 422 was 45 m. p. h. As Gerhart proceeded toward the intersection his view of Route 82 to the north was partially obstructed by a two and one-half story brick home set back on the northwest corner of the intersection. When he approached the intersection he observed that no automobiles or headlights from southbound vehicles were coming from the north on Route 82. As he drove past the Homestead Inn located at the southwest corner of the intersection he looked to his right. When his tractor was in the middle of the southbound lane of Route 82 he saw headlights coming toward him from his left at a distance of approximately twelve feet. He swerved right but was struck by

Bucci's automobile on the driver's door of his tractor. After impact the tractor came to rest in a jackknifed position at Delp's Esso service station located at the southeast corner of the intersection. The Volkswagen came to rest in a parking lot to the east side of Liss Motors located on the northeast corner of the intersection. The tractor was damaged at the driver's door and left front fender. The Volkswagen was damaged on its passenger side and front portion."

■ The law is clear that a driver who does not look for traffic on the intersecting street before and while proceeding through an intersection controlled by a flashing yellow light in his favor is guilty of negligence as a matter of law. *Musi v. De Sarro*, 370 F.2d 113 (3d Cir. 1966); *Allega v. Eastern Motor Express Co., Inc.*, 378 Pa. 1, 105 A.2d 360 (1954); *see Hayter v. Sileo*, 230 Pa.Super. 329, 326 A.2d 462 (1974). This rule of the road has sometimes been described as one "which *certainly requires looking to the right and left before entering upon the intersecting street.*" *Allega v. Eastern Motor Express Co., Inc.*, supra at 4, 105 A.2d at 362 (emphasis original). At trial, the following exchange took place between Gerhart, the driver of the tractor-trailer, and counsel for the Bascelli estate:

"Q. Now, when you looked to your left, the left look that you just spoke about and saw headlights, where was the front bumper of your truck at that time?

"A. I would say either at the intersection or through the intersection.

"Q. That was the first time that you looked to your left?

"A. At the intersection, yes, sir."
Notes of Trial Testimony at 226–27.
A few moments later, the following additional testimony was elicited from Gerhart:

"Q. So that when you first looked to your left as you came to the intersection, you were already in the intersection; is that correct?

"A. Yes, sir.

"Q. As a matter of fact, it was your recollection that this happened in the middle of the intersection, when you looked to your left and you saw these lights; is that correct?

"A. Yes, sir." Notes of Trial Testimony at 231.

On the basis of this testimony it is argued by the Bascelli estate that Maier was liable because of the clear negligence of its driver, Gerhart, and it is argued by Jean Bucci that Gerhart could not recover as a plaintiff because of his contributory negligence in not looking to his left for traffic until he was within the intersection. Were this the only testimony by Gerhart regarding his attentiveness while approaching the intersection, we would be inclined to reverse in favor of appellants, the Bascelli estate and Jean Bucci. However, Gerhart was later recalled as a witness. By the use of photographs taken of the intersection from the viewpoint of a driver approaching the intersection in an easterly direction on Route 422 (as was Gerhart), Gerhart's counsel was able to demonstrate that Gerhart did look for crossing traffic on Route 82 before he entered the intersection.

"Q. And did you have that view [from exhibit No. 35, a photograph of the intersection looking east on Route 422] as you approached the intersection.

"A. Yes, sir, I did.

"Q. And approximately how far away were you from the—shall we say the center of the intersection at the time you saw that?

"A. That was right before you come to the home on the left side [the northwest corner].

"Q. At that point did you see any vehicles on Route 82?

"A. No, sir, I did not.

"Q. Now, it was dark at that time, wasn't it?

"A. Yes, sir.

"Q. Did you see any headlights, headlight beams projecting out of this area that was visible to you at that time?

"A. No, sir, I did not." Notes of Trial Testimony at 302.

From the above testimony it becomes evident that Gerhart did look for traffic on the intersecting road as he approached the intersection. Was Gerhart's act in looking for cross-traffic, however, sufficiently attentive to avoid the determination that he was guilty of contributory negligence as a matter of law in his case as a plaintiff? Appellant Bucci allges that it was not.

"Contributory negligence is normally a question for the jury, and thus the trial judge may decide the issue only in the clearest of cases. *Heffernan v. Rosser*, 419 Pa. 550, 215 A.2d 655 (1966); *Walker v. Martin*, 214 Pa.Super. 287, 257 A.2d 619 (1969). It is proper for a trial judge to submit the question to the jury '. . . if there is any evidence upon the consideration of which reasonable minded individuals might disagree as to whether or not the plaintiff was guilty of negligence which contributed to the accident, . . .' *Heffernan* [*v. Rosser*], supra, at 555, 215 A.2d at 658." *Reist v. Manwiller*, 231 Pa.Super. 444, 447, 332 A.2d 518, 519 (1974). We must now determine whether the alleged contributory negligence of Gerhart was so clear that the lower court should have made that finding as a matter of law.

■■ As stated earlier, a driver approaching an intersection must look for traffic on the intersecting street, *Musi v. DeSarro*, supra, and this has at times been stated as a duty to look to the right and left before entering the intersection. *Allega v. Eastern Motor Express Co., Inc.*, supra. "[A] mere cursory glance, not calculated to bring home knowledge of the traffic conditions in the intersection" does not satisfy the requirement of looking. *Stevens v. Allcutt*, 320 Pa. 585, 587,

184 A. 85 (1936). Then again, a driver approaching an intersection is not bound to look in all directions simultaneously, *Goldenberg v. Watkins,* 191 Pa.Super. 5, 155 A. 2d 478 (1959), nor need he "swivel his head like a ventriloquist's dummy" in order to be free of contributory negligence. *Taylor v. Mountz,* 387 Pa. 321, 327, 127 A. 2d 730, 733 (1956); *see also Ridley v. Boyer,* 426 Pa. 28, 231 A.2d 307 (1967).

Although the requirement of looking continues even though the motorist has a green or flashing yellow light in his favor, the duty is of a lesser degree than when the intersection is uncontrolled. *Musi v. DeSarro,* supra. The reason for lessening the standard of care for the driver who has a light in his favor was explained by Judge Woodside in *Cericola v. Redmon,* 182 Pa.Super. 19, 23, 124 A.2d 417, 419–20 (1956) :

> "Traffic lights and 'Stop' signs are installed to facilitate the flow of traffic. When one has the right of way by virtue of being on a through street . . . he must not be held to the exact degree of care that would have been required of him had there been no light or stop sign in his favor at the intersection. To hold otherwise would thwart the purpose of through highways and traffic lights to facilitate the flow of traffic."

Nevertheless, a driver approaching an intersection with a light in his favor may not enter the intersection blindly in reliance on the light. *Smith v. United News Co.,* 413 Pa. 243, 196 A.2d 302 (1964). The right to assume that a driver approaching the intersection will stop at the stop sign (or flashing red light) and honor the right of way of the motorist with the light in his favor is a qualified one. And the driver with the right of way who has " 'timely warning that his confidence in the other's lawabidingness is misplaced,' " *Cericola v. Redmon,* supra at 23, 124 A.2d at 419, *quoting Jones v. Williams,* 358 Pa. 559, 564, 58 A.2d 57 [, 60] (1948), is guilty of negligence if he proceeds into the intersection in spite of

such notice. *See generally,* Annot., 3 A.L.R.3d 180 (1965). However, the driver with the right of way is under no obligation to look all the way down the street controlled by a stop sign or light to determine whether some motorist is proceeding towards the intersection at an excessive speed or in some other reckless manner. *Fowler v. Smith,* 217 Pa.Super. 244, 269 A.2d 340 (1970) ; *Cericola v. Redmon,* supra. Absent warnings to the contrary, a driver is not negligent as a matter of law when he enters the intersection relying that others will obey the traffic controls. *Zumbo v. Ellis,* 232 Pa.Super. 566, 334 A.2d 770 (1975).

In the present case, Gerhart testified that as he approached the intersection that night he reduced his speed and had the same view of the intersection as that depicted by a certain photograph introduced into evidence. He did not see any vehicles on Route 82, the intersecting road, at that time, nor did he see any headlight beams projecting into the intersection. This act of looking for traffic as Gerhart approached the intersection was not merely a casual glance. *See Stevens v. Allcutt,* supra. The present case is clearly distinguishable from both *Nehrebecki v. Mull,* 412 Pa. 438, 194 A.2d 890 (1963) and *Ratcliff v. Myers,* 382 Pa. 196, 113 A.2d 558 (1955) relied on by appellants. In *Nehrebecki* the driver denied ever looking for traffic upon entering the intersection and further stated: "If I paid attention to every intersection that I came to, I am afraid I would be in more accidents than I am now." *Id.* at 441, 194 A.2d at 891. In *Ratcliff,* the driver never looked for any cross-traffic and testified that "seeing and hitting was [just] one". In our case, the testimony is clear that Gerhart looked for traffic coming from the north before he entered the intersection.

In summary, Gerhart's initial testimony that he failed to look to his left until his tractor trailer was within the intersection would require a finding of con-

tributory negligence as a matter of law. *See Ratcliff v. Myers,* supra. However, his later testimony indicated that he did look in an attentive way for traffic on Route 82 before he entered the intersection. Should the jury accept this testimony and find that Gerhart acted in a reasonable manner prior to and while entering the intersection, the jury could find Gerhart free of contributory negligence. " '[I]f on one part of the plaintiff's testimony . . . he is entitled to go to the jury and on another part he is not . . . it is for the jury to reconcile such conflicting statements and say which shall prevail.' " *Fowler v. Smith,* supra at 248–49, 269 A.2d at 342, *quoting Cardone v. Sheldon Hotel Corp.,* 160 Pa. Super. 193, 195, 50 A.2d 700, 702 (1947). Under these circumstances, it was proper for the court below to decline to find Gerhart guilty of contributory negligence as a matter of law and the court below properly submitted the issue to the jury for its consideration. We should also not lose sight of the principle that "contributory negligence is a defense which the defendant has the burden of proving and that there is no burden on the plaintiff to prove his freedom from contributory negligence . . . ." *Matteo v. Sharon Hill Lanes, Inc.,* 216 Pa.Super. 188, 191, 263 A.2d 910, 912 (1970). Accordingly there was no affirmative duty on Gerhart to prove that he looked prior to entering the intersection. Although the jury would have been warranted in finding Gerhart guilty of negligence, we cannot say that the evidence regarding his negligence was so clear that the lower court was required as a matter of law to remove the question from the jury's consideration.

Appellants next argue that assuming the question of Gerhart's negligence was one for the jury, the jury's verdict finding Gerhart free of contributory negligence in his case as a plaintiff and free of negligence in the case against Maier was against the weight of the evidence. " 'Ordinarily, we are not interested in, nor will

we consider, the weight of the evidence on the one side or the other, as shown by the record of a trial in the court below; that was a subject for the jury primarily, for the court below secondarily, and in the absence of a clear abuse of discretion, is not, on appeal, a matter for review . . . . Hence, one who asserts that a trial judge abused his discretion in granting or refusing to grant a new trial, has a heavy burden to carry; too heavy, indeed, unless he can show a clear abuse of discretion by the court below.' " *Eisert v. Jones*, 408 Pa. 73, 79, 182 A.2d 717, 720 (1962), *quoting Koch v. Imhof*, 315 Pa. 145, 147, 172 A. 672, 673 (1934). Without reviewing the testimony again, we are satisfied that the lower court did not commit an abuse of discretion in refusing to grant a new trial on the basis of the weight of the evidence. *See Hayter v. Sileo*, supra.

The second main argument made by appellants is that the trial court erred in giving the following instruction to the jury:

"The testimony of Richard D. Gerhart to the effect that the Volkswagen struck his truck on the left side in the area of the left door of the truck is *positive testimony of an actual fact.*"

(Emphasis added). Appellants' theory at trial was that the tractor-trailer struck the Volkswagen, from which one could infer that the Volkswagen was in the intersection first and, therefore, should have been seen by Gerhart. The opinion testimony of the state trooper who investigated the accident supported the theory that the truck hit the Volkswagen. On the other hand, Gerhart testified that he *observed* the Volkswagen strike his tractor-trailer. To highlight the difference between the two types of evidence, the lower court first charged "opinion evidence is generally considered as being of a low grade, and not entitled to much weight against positive testimony of actual facts." Then the lower court gave the above charge which was objected to by appellants. Appellants

argue that by describing Gerhart's testimony on this matter as "positive testimony of an actual fact," it removed from the jury its function of deciding the facts concerning the position of the vehicles at the time of the accident. This argument must fail. First, similar language was used by the Pennsylvania Supreme Court in *Ray v. Philadelphia,* 344 Pa. 439, 25 A.2d 145 (1942), in describing the difference between opinion testimony and eyewitness testimony. Second, in reviewing the court's charge as a whole, as we must when part of it is excepted to, *Taylor v. Fardink,* 231 Pa.Super. 259, 331 A.2d 797 (1974), it becomes apparent that after the exception was taken the court told the jury:

"I would like to reiterate that in regard to all the facts in this case, Members of the Jury, that you and you alone are the judges of those facts. You and you alone determine what those facts are. This is your function and duty."

We are satisfied with the charge of the court below.

The final argument made by the Bascelli estate alone is that the court below should have granted a new trial because the verdict of $25,000.00 for the death of a 19 year old college student was grossly inadequate. " 'Our scope of review in deciding whether the lower Court should have granted a new trial on the ground that the verdict was inadequate is whether the lower Court committed a clear or gross abuse of discretion.' *Black v. Ritchey,* 432 Pa. 366, 369, 248 A.2d 771, 773 (1968) (emphasis omitted). 'Unless a verdict is merely nominal appellate courts are not inclined to look askance on the refusal of a trial court to set it aside.' *Galizia v. McKim,* 210 Pa.Super. 144, 150, 232 A.2d 213, 216 (1967)." *Kolb v. Hess,* 227 Pa.Super. 603, 609–10, 323 A.2d 217, 221 (1974). The award of $25,000.00 to the Bascelli estate is far from nominal. We declined to find

any abuse of discretion by the court below in refusing to grant a new trial on this basis.

Judgment affirmed.

CERCONE, J., dissents.