545 A.2d 935

Constance D. COOPER, Appellant,

v.

Carrie BURNS, Appellee.

Constance D. COOPER, Appellee,

v.

Carrie BURNS, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 26, 1988.

Filed July 11, 1988.

Reargument Denied Aug. 22, 1988.

John P. Lydon, Pittsburgh, for appellant (at 1144) and appellee (at 1145).

Thomas J. Madigan, Pittsburgh, for appellee (at 1144) and appellant (at 1145).

Before BROSKY, WIEAND and DEL SOLE, JJ.

WIEAND, Judge:

On February 16, 1984, at or about 1:00 p.m., Constance Cooper was injured in an automobile accident which occurred at the intersection of the Sixteenth Street Bridge and Progress Street in the City of Pittsburgh. Cooper had been travelling in a westerly direction on Progress Street and was approximately halfway through the intersection when her vehicle was struck by another vehicle, operated by Carrie Burns, which had entered the intersection from the Sixteenth Street Bridge. To recover for injuries sustained, Cooper brought an action against Burns. The trial of this action was held before a jury which found that Burns's causal negligence was seventy-five percent and that Cooper's causal negligence was twenty-five percent. The jury determined that Cooper had sustained damages in the amount of $275,000. Thereafter, the trial court molded the jury's findings into a verdict in Cooper's favor in the amount of $206,250. Burns filed post-trial motions for judgment n.o.v. and/or new trial, and Cooper petitioned for the assessment of delay damages. Both Burns's post-trial motions and Cooper's request for delay damages were denied by the trial court. Now, in separate appeals, Burns challenges the trial court's denial of her post-trial motions and Cooper challenges the trial court's refusal to impose delay damages.

Burns's first argument is that the trial court erred when it denied her motion for judgment n.o.v. She contends that the evidence established that plaintiff Cooper had failed to look to her left before entering the intersection. This, it is argued, was negligence on the plaintiff's part which exceeded any negligence on the part of the defendant.

In considering the sufficiency of the evidence to sustain the verdict, we view the evidence in the light most favorable to the verdict winner, granting that party the benefit of all reasonable inferences, and determine only whether the evidence introduced at trial was sufficient to sustain the verdict. *Curran v. Stradley, Ronon, Stevens & Young,* 361 Pa.Super. 17, 24, 521 A.2d 451, 454 (1987). See also:

*Laniecki v. Polish Army Veterans Assoc.*, 331 Pa.Super. 413, 417, 480 A.2d 1101, 1103 (1984).

█ The evidence in the instant case, viewed in the light most favorable to the verdict winner, was that the plaintiff had stopped for a red traffic light on Progress Street before entering the intersection with the Sixteenth Street Bridge. When the light turned green, plaintiff started into the intersection, and, after negotiating the first half of the intersection, was struck by defendant's vehicle. An eyewitness testified that the defendant had proceeded from the Sixteenth Street Bridge into the intersection despite the fact that the controlling traffic light had turned red. This witness estimated that the defendant had been travelling at a speed of 45 miles per hour and said that the speed limit had been 25 miles per hour.

Appellant's argument relies on the plaintiff's admission that she was not sure that she had looked to her left before entering the intersection. This concession was an inadequate basis on which to enter judgment n.o.v. Although the jury determined that the plaintiff had been negligent, it found that the defendant's causal negligence had been greater. There was competent evidence to support such a finding. Therefore, the trial court properly denied appellant's motion for judgment n.o.v.

█ Appellant's remaining issues pertain to alleged trial errors which, it is argued, require that a new trial be granted. In reviewing the denial of a motion for a new trial we decide whether there was an abuse of discretion or error of law committed by the trial court which might have affected the outcome of the case. See: *Mohn v. Hahnemann Medical College and Hospital*, 357 Pa.Super. 173, 174, 515 A.2d 920, 921 (1986). See also: *Allison v. Snelling & Snelling, Inc.*, 425 Pa. 519, 229 A.2d 861 (1967).

Appellant argues that the trial court erred by refusing to charge the jury as requested in the following points for charge:

4. A motorist who has the green light must observe the condition at the intersection at the time he enters it to be reasonably assured that his journey will be safe. *Smith v. United News Company* [413 Pa. 243] 196 A.2d 302, 305 (Pa.1964).

5. A mere cursory glance, not calculated to bring home knowledge of the traffic conditions in the intersection, does not satisfy the requirement of looking. *Stevens v. Allcutt* [320 Pa. 585] 184 A. 85 (Pa.1936); *Bascelli v. Bucci* [244 Pa.Super. 347] 368 A.2d 754, 759 (Pa.Super. 1976).

. . . .

8. The Defendant claims that the Plaintiff was contributorily negligent and the Defendant has the burden of proving the existence of such negligence. You must, therefore, determine whether the Plaintiff was negligent, in that as an ordinarily prudent person, under all circumstances then present, she failed to exercise reasonable care for [her] own protection. If you find that Plaintiff was negligent, you must then determine whether Plaintiff's conduct was a substantial factor in bringing about her injury.

9. If you find that Plaintiff's causal negligence was greater than the causal negligence of the Defendant, then the Plaintiff is barred from recovery.

. . . .

13. If you determine that the Plaintiff's incapacity is or probably will be partial rather than total for any or all of its duration, Defendant is entitled to have deducted the amounts which Plaintiff earns or reasonably could earn during the period of partial disability. *2 Harper & James, The Law of Torts*, Section 25.8.

14. The Plaintiff has a duty to mitigate her damages. That is, if the Plaintiff is capable of working, she cannot sit back and incur lost wages. If you find that the Plaintiff was capable of working after the accident, you may not award her lost wages for the period during which she was capable of working. If you determine that

the Plaintiff has been partially disabled since the accident, you may only award her lost wages equivalent to the difference between what she was earning prior to the accident and what she could earn after the accident.

In reviewing a trial court's instructions to the jury, it is well settled that we must view the court's charge in its entirety to determine whether any prejudicial error has been committed. *Riddle Memorial Hospital v. Dohan*, 504 Pa. 571, 576, 475 A.2d 1314, 1316 (1984). "A trial court is not required to accept the precise language of points for charge submitted by counsel so long as the issues are defined accurately and the applicable law is correctly reviewed." *Spearing v. Starcher*, 367 Pa.Super. 22, 29, 532 A.2d 36, 40 (1987). See also: *Geyer v. Steinbronn*, 351 Pa.Super. 536, 554, 506 A.2d 901, 911 (1986); *Fish v. Gosnell*, 316 Pa.Super. 565, 580, 463 A.2d 1042, 1050 (1983).

■ Our examination of the trial court's jury instructions discloses that the jury was adequately and accurately instructed as to plaintiff's duty of care, applicable principles of contributory and comparative negligence, and plaintiff's duty to mitigate damages. Appellant was not prejudiced by the trial court's divergence from the precise language which appellant had requested. There is in the jury instructions no error requiring the grant of a new trial.

■ At trial, the plaintiff-appellee introduced the testimony of Kathleen Flenner, the director of Occupational Resources Specialists, to show that plaintiff had attempted to find alternative employment after the accident. During this testimony, Flenner stated that the plaintiff had been cooperative and motivated in seeking employment. Appellant contends that the trial court erred in allowing such testimony because it was irrelevant and prejudicial character evidence. We do not agree. The testimony of Kathleen Flenner was offered to show that plaintiff had attempted to mitigate damages. Appellant, throughout the trial, sought to show that the plaintiff had failed to mitigate her damages. Flenner's testimony was relevant to the mitigation of

damages issue, and the trial court did not err by allowing the testimony.

Dr. David Foss testified as plaintiff's witness via videotape deposition. His deposition had been taken on February 14, 1987, shortly before trial. On the day prior thereto, appellant's counsel learned that plaintiff-appellee would require additional surgery. A supplemental pre-trial statement including this new information was filed on February 14, 1987, immediately prior to the taking of Dr. Foss' deposition. Appellant requested a continuance of the trial, alleging that additional time was needed to prepare for the cross-examination of Dr. Foss and to refute the new evidence. The motion for a continuance was denied. Thereafter, Dr. Foss gave deposition testimony which included references to plaintiff's need for additional surgery. Appellant argues that Dr. Foss' testimony should not have been allowed at trial because it was given in violation of a local rule of discovery and because the trial court had abused its discretion by denying the defense motion for continuance. Appellant contends that Allegheny County Rule 212 limits an expert's testimony to matters which have been identified in a pre-trial statement and that the information concerning plaintiff's need for additional surgery had not been included in plaintiff's initial pre-trial statement. Therefore, it is argued, Dr. Foss should not have been allowed to testify regarding the same. We disagree.

Preclusion of a witness' testimony is a drastic sanction; it should not be applied unless the facts of a case make it absolutely necessary. See: *Gill v. McGraw Electric Co.*, 264 Pa.Super. 368, 381, 399 A.2d 1095, 1102 (1979). Noncompliance with the literal requirements of a local discovery rule does not alone require the exclusion of testimony. *Neal v. Lu*, 365 Pa.Super. 464, 473, 530 A.2d 103, 108 (1987). Rather, in order to determine whether the failure to adhere to a local rule of discovery requires the exclusion of expert testimony we must determine: (1) whether appellant suffered any prejudice or surprise; (2) whether such prejudice or surprise could have been cured;

(3) whether the expert testimony disrupted the trial or adversely affected other cases in the court; and (4) whether the plaintiff exhibited bad faith or willfulness in failing to comply with the rule. See: *Neal v. Lu, supra,* 365 Pa.Super. at 474–475, 530 A.2d at 109. See also: *Sindler v. Goldman,* 309 Pa.Super. 7, 15 n. 8, 454 A.2d 1054, 1058 n. 8 (1982). Cf. *Gill v. McGraw Electric Co., supra,* 264 Pa.Super. at 382, 399 A.2d at 1102 (same factors applied to determine whether failure to comply with pre-trial discovery order justified exclusion of expert testimony).

Upon reviewing the record in the instant case, we find that Dr. Foss' testimony regarding plaintiff's need for additional surgery caused no prejudice to appellant. First, the new information related by Dr. Foss did not change his diagnosis of plaintiff's injuries. Dr. Foss had diagnosed the plaintiff's injury as herniated discs at the C4–C5 level. The only new information supplied in the supplemental pretrial statement was that plaintiff would require additional surgery because of her back injury. Secondly, defendant's expert witness, Dr. Roy Temeles, was aware of Dr. Foss' diagnosis and had examined the plaintiff twice. Dr. Temeles acknowledged that the plaintiff had a disc problem, but he concluded that the problem was the result of a degenerative disease which had pre-dated the accident. This was also appellant's position at trial, which was supported by the videotaped deposition testimony of Dr. Temeles. Inasmuch as appellant's defense was that the plaintiff's disc problem had been unrelated to the accident, it cannot be said that the plaintiff-appellee's need for additional surgery impeded the presentation of appellant's defense. That the jury found Dr. Foss' diagnosis to be more credible than that of Dr. Temeles does not entitle appellant to a new trial. The record reveals that Dr. Foss, who was also plaintiff's treating physician, examined her on February 12, 1987 and at this time determined that additional surgery was necessary. In that plaintiff's initial pre-trial statement was filed on December 9, 1986, this information could not possibly have been included therein. Moreover, defense counsel was

promptly notified of Dr. Foss' conclusion that more surgery was required. Under these circumstances, we conclude that the plaintiff acted in good faith and did not willfully violate the local rule of discovery. The trial court properly allowed Dr. Foss' testimony.

Appellant also is not entitled to a new trial on the ground that the trial court abused its discretion by denying the motion for a trial continuance. The decision to grant or deny a continuance lies in the sound discretion of the trial court and will not be disturbed absent an abuse of discretion or manifest error. *Feingold v. Southeastern Pennsylvania Transportation Authority*, 339 Pa.Super. 15, 19, 488 A.2d 284, 287 (1985), *aff'd*, 512 Pa. 567, 517 A.2d 1270 (1986). See also: *Phoenix Mutual Life Insurance Co. v. Radcliffe on the Delaware, Inc.*, 439 Pa. 159, 165, 266 A.2d 698, 701 (1970); *Ragnar Benson, Inc. v. Bethel Mart Assoc.*, 308 Pa.Super. 405, 417, 454 A.2d 599, 604 (1982). In the instant case, appellant requested that the trial be continued until the next available trial date. The trial court, in addressing appellant's post-trial motions, said that the granting of appellant's motion would have resulted in an eight month delay in the trial. The trial court was also of the opinion that appellant had not been prejudiced by Dr. Foss' testimony. The court concluded, therefore, that the denial of the motion for a continuance had not been an abuse of discretion. We agree with this conclusion. The denial of appellant's motion for a continuance does not require that a new trial be granted.

Appellant's final challenge to the testimony of Dr. Foss involves two alleged instances of hearsay testimony. Specifically, appellant asserts that during Dr. Foss' testimony, he referred to the opinions and conclusions of two other physicians who had treated the plaintiff, but who did not testify at trial. Plaintiff-appellee contends, however, that the testimony to which appellant objected came within an exception to the general rule which permits an expert witness to rely on reports of others. This exception "permit[s] 'medical witnesses to express opinion testimony on

medical matters based, in part, upon reports of others which are not in evidence, but which the expert customarily relies upon in the practice of his profession.' " Packel & Poulin, Pennsylvania Evidence, Ch. VII, § 703 at 517–518 (1987), quoting *Commonwealth v. Thomas,* 444 Pa. 436, 445, 282 A.2d 693, 698 (1971). See also: *Commonwealth v. Daniels,* 480 Pa. 340, 390 A.2d 172 (1978); *Commonwealth v. Karch,* 349 Pa.Super. 227, 502 A.2d 1359 (1986); *Commonwealth v. Gilliard,* 300 Pa.Super. 469, 446 A.2d 951 (1982); *Commonwealth v. Haddle,* 271 Pa.Super. 418, 413 A.2d 735 (1979); *Commonwealth v. Wilson,* 245 Pa.Super. 415, 369 A.2d 471 (1976); *Jumper v. Jumper,* 240 Pa.Super. 99, 362 A.2d 411 (1976); *Christy v. Darr,* 78 Pa.Cmwlth. 354, 467 A.2d 1362 (1983). But see: *Spotts v. Reidell,* 345 Pa.Super. 37, 497 A.2d 630 (1985).

Dr. Foss said that he had relied upon a diagnosis by Dr. Yudofsky, a psychiatrist, to the effect that the plaintiff was suffering from a major depression. In essence, Foss testified that he had asked Dr. Yudofsky for a consultation and had used Yudofsky's diagnosis in treating the plaintiff. He said that because of Dr. Yudofsky's diagnosis, he had postponed plaintiff's initial surgery until the depression had been treated. This was within the *Thomas* exception and does not require the grant of a new trial.

More troubling is the testimony of Dr. Foss which was the subject of appellant's second hearsay objection. This testimony pertained to a report which had been made by Dr. Jose Amayo as follows:

Q. Did you receive copies of the reports from Dr. Amayo, copies which both counsel have here, as part of his and your treatment of her?

A. Yes.

Q. Were those reports from him something else that you also relied on in your diagnosis and treatment of Constance Cooper?

A. Having essentially a second opinion is always helpful, yes.

Q. In the report—did you receive a report on March 27, 1986 from Dr. Amayo?

A. Yes.

Q. Would you tell us what if anything Dr. Amayo indicated in his diagnosis concerning your diagnosis of the herniated disk at C4–C5.

MR. EVAN: Again I would like to place an objection on the record as to the doctor reading any statements from Dr. Amayo's reports, especially Dr. Amayo's opinions. I feel it constitutes hearsay and is not admissible.

Q. Doctor, would you indicate what Dr. Amayo had to say about your diagnosis of the disk herniation at C4–C5.

A. Yes. It was his diagnosis that there was a central disk herniation of C4–5 level proven by a CAT scan.

Q. That's the same diagnosis you had reached.

A. It is.

This was improper. It was offered as an extrajudicial opinion by a physician who was not subjected to cross-examination. In the first place, it was opinion testimony. Secondly, it was hearsay evidence. It did not fall within any exception to the hearsay exclusion. Clearly, it was not admissible without the presence of Dr. Amayo, who would then have been available for cross-examination.

At trial, Dr. Foss was the plaintiff's only expert witness. He testified that the plaintiff had suffered herniated discs in her back as a result of the accident. The defendant, similarly, presented one expert witness, Dr. Temeles, who testified that the plaintiff had a pre-existing, degenerative disease involving the discs and that it was not the result of trauma. Thus, there were the conflicting testimonies of two physicians for the jury to evaluate. By stating that Dr. Amayo had confirmed his diagnosis, Dr. Foss was permitted to corroborate his own medical opinion by improper hearsay. Dr. Amayo was not subjected to cross-examination concerning his diagnosis, and the jury was not able to assess his credibility or his qualifications.

Because of this improper and prejudicial hearsay testimony, we are constrained to grant appellant a new trial. Because the liability issues have been fairly tried, however,

the new trial will be limited to the issue of damages. See: *Messer v. Beighley*, 409 Pa. 551, 187 A.2d 168 (1963) (where the only trial errors deal with the issue of damages, retrial should be limited to that issue); *Ecksel v. Orlenes Construction Co.*, 360 Pa.Super. 119, 519 A.2d 1021 (1987) (new trial may be awarded solely on issue of damages if issue of liability has been fairly established and question of damages is readily separable); *McIntyre v. Clark*, 314 Pa.Super. 552, 461 A.2d 295 (1983) (same).

Appellant contends also that the verdict was excessive. Because we have determined that a new trial is necessary on the issue of damages, we express no opinion regarding the amount of the jury's verdict. Similarly, a review of the trial court's refusal to award delay damages would be premature. The trial court will have the opportunity to reconsider this issue following a retrial of the damage issue.

The judgment of the trial court is reversed and the case is remanded for a new trial limited to the issue of plaintiff's damages. Jurisdiction is not retained.

DEL SOLE, J., files a concurring and dissenting opinion.

DEL SOLE, Judge, concurring and dissenting:

I join the Opinion of my colleagues in the majority in all respects, save one. I would not vacate the judgment and remand the case for retrial on damages.

While the reference by the plaintiff's treating physician, Dr. Voss, to the report of Dr. Amayo may have been error, it is at most harmless.

The plaintiff's treating physician testified at length that in his opinion the plaintiff suffered a herniated disc at C4–C5 resulting from the accident. He further testified that the plaintiff had degenerative disc disease at C5–C6.

This diagnosis of herniated disc at C4–C5 was based upon the physician's treatment of the patient, two CAT-scans and a myelogram with reports from appropriate neuroradiologists that were admitted into evidence without objection. In addition, plaintiff underwent a diskectomy and fusion at C4–C5 to repair the herniated disc.

The defendant's physician, Dr. Temeles, testified that in his opinion the CAT-scans and myelogram did not show a herniated disc.

The slight reference to the fact that Dr. Amayo stated that there was disc herniation at C4–C5 level proven by CAT-scan was not such an error as would warrant a new trial.

In addition, the defendant's physician clearly put the matter at issue when he testified as follows:

Q. Now, Doctor, I note in your records that you reviewed the nuclear radiologist's reading of the CT scan in May of 19—or, I am sorry, of March 1985. And I believe in your records it is even indicated as Item 4D. I take it that you disagree with the radiologist's reading of the CT scan to indicate she has a herniated disc?

A. Yes. The word "herniated" disc is what I object to.

Q. And also, Doctor, I take it you disagree with the opinions of the two nuclear radiologists on the cervical myelogram of June 9, 1986, that that myelogram shows a herniated disc?

A. The word "herniated" disc I disagree with.

Q. And in addition, Doctor, you disagree with Dr. Amayo's records from the Harmarville Rehabilitation Institute, particularly his report of March 1986, wherein he indicates she has a herniated disc at C4–C5. I believe it is report No. 5 in your papers before you.

A. Yes. I think if I am not mistaken—and give me a chance to look at that report—I think Dr. Amayo points out that this is what was reported, not his interpretation, that he is purely mimicking the report since he found no clinical picture. He says diagnosis, herniated disc at C4–5 level by CT scan, but he did not label her as having a herniated disc in her cervical spine.

Q. So in his report under the notation diagnosis he indicates herniated disc at C4–C5 by CT scan?

A. Yes. He didn't even read it, he was mimicking the report. He found no herniated disc in this lady in any of his reports that he rendered—and there was quite a few.

Q. The report though that we are discussing now is his report and under diagnosis that's what it has?

A. It has that.

Q. And, of course, you would disagree with that insofar as it was the very same reading as professed by the radiologists that you have already described, Doctor, in your report of June 2, 1986, you don't note any defects in there at C4–C5 at all. As a matter of fact, you don't even mention that disc space anywhere in that report; is that correct?

A. I simply state there is no evidence of a herniated disc to be seen in the scan performed.

First, I believe that the reference to Dr. Amayo was insignificant. Also, I believe that it was addressed and answered by the defendant through the defendant's medical expert at the time of trial.

When weighing the slight reference to Dr. Amayo against the diagnostic procedures of CAT scans and myelogram coupled with a surgical procedure to repair the herniated disc, I would find that any reference to Dr. Amayo in the plaintiff's case was harmless error and would affirm the judgment.