454 A.2d 599

**RAGNAR BENSON, INC.**

v.

**BETHEL MART ASSOCIATES, a partnership, and Edward Servov and Goldie J. Szarka, individuals and general partners of Bethel Mart Associates, Appellants.**

Superior Court of Pennsylvania.

Argued Oct. 15, 1981.

Filed Dec. 23, 1982.

Petition for Allowance of Appeal Denied March 21, 1983.

David M. Priselac, McKeesport, for appellants.

Joseph W. Conway, Pittsburgh, for appellee.

Before WIEAND, JOHNSON and MONTEMURO, JJ.

MONTEMURO, Judge:

Appellee, a construction firm, entered into a contract with appellants, a limited partnership, for construction of a shopping mall. Appellants had construction financing which was about to expire, and in order to prevent loss of that commitment, the contract was signed in July of 1975 before the construction plans were in final form. Addenda were later signed revising the original terms. A completion date of September 1, 1976 was abandoned by written agreement and material increases in construction costs were also provided.

The lower court found, and the record confirms, that appellants were responsible to provide complete plans and specifications as well as all governmental approvals and permits, but were slow to provide these essential papers. Appellee was finally able to begin work on site in December, 1975 and to haul soil off-site in late April, 1976. Work was halted on May 14, 1976 when appellants sent a telegram ordering the work to stop.

Appellee filed Complaint in Assumpsit on November 12, 1976, alleging a typical case of failure to perform on a construction contract. Appellants' Answer, New Matter and Counterclaim first raised issues of "breach of trust and

confidence" between the parties and "conspiracy" of appellee with a subcontractor, King David, the site excavator.

The case was rescheduled many times, but eventually came to trial in January of 1980. The trial judge declared a mistrial *sua sponte*, after improper remarks in the opening address of appellants to the jury, and then gave permission to appellee to amend its pleadings to conform to the proofs it wished to offer *apropos* of the bad faith and conspiracy aspects of the case. Appellants then once again requested a continuance, which was denied. The amended pleadings were filed January 25, 1980 and the case was re-tried in late May and early June of 1980.

Testimony was of two types: some went to the issues of the responsibilities of the parties under the written contract and the assignment of blame for failure to meet those responsibilities; some went beyond the wording of the contract proper as both parties attempted to discuss issues of bad faith and fraud.

The purport of the appellants' proof of bad faith was to show that subcontractor, King David, had deliberately put off the preparation of the site in order to use the displaced soil to improve ground he wished to purchase or that he had over-estimated the work done and had over-charged for his hauling. Appellants' theory was that appellee was responsible for the bad faith of an agent-subcontractor. Appellee, on the other hand, countered with testimony that appellants had foisted King David upon it as part of their deal, and that appellants had falsely guaranteed an easement to an adjacent property, a situation which eventually led to the more costly hauling of soil to another area.

We agree with the lower court that testimony on the bad faith issues were not sufficient to prove a case for either party. The record reveals the rosy assurances commonly offered in the early phases of a potentially profitable deal. The trial judge properly refused to charge the jury on these issues and in no way based its opinion upon the parol evidence which was permitted to be heard while those issues were explored.

The jury was therefore restricted to breach-of-contract issues, and returned a verdict for the appellee after a trial that had consumed seven days, in a case which had produced a reproduced record of some 1500 pages. Appellants have appealed that verdict on nine grounds, none of which we find merits reversal. We therefore affirm, but will consider each alleged ground of error *seriatim.*

■ First, appellants complain that expert testimony which they were prepared to offer was incorrectly precluded from the trial. The lower court sustained the appellee's objections to admission of the testimony on two grounds: primarily, failure to comply with local Rule 212; secondly, because the testimony the expert would have given would have impeached the testimony given by another witness also called by appellee.

Local Rule 212 pertains to pre-trial conferences. Sixty days notice of the conference is provided for all parties at 212 II; within thirty days plaintiff is to serve various items on all parties, including at VI.A.(d) the reports of experts; within fifteen days the defendant must reply with all similar material. Rule 212 VI.E. states unequivocally that:

> Witnesses ... whose reports have *not* been furnished under VI.A.(1)(c) or (d), *supra, will not, under any circumstances whatsoever, be permitted to testify at the subsequent trial of the case.* (Emphasis supplied)

In construing Rule 212, despite its mandatory language, we are required to take the following factors into consideration in determining whether preclusion of expert testimony is appropriate:

> "(1) the prejudice or suprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith of [sic] willfulness in failing to comply with the court's order."

*Nowosielski v. Kryzosiak*, 280 Pa.Super. 243, 421 A.2d 703 (1980) (Quoting *Gill v. McGraw Electric Co.*, 264 Pa.Super. 368, 382, 399 A.2d 1095, 1102 (1979))

We find no error in the trial court's ruling. Rule 212 is designed to expedite trial and the orderly presentation of evidence. Appellants herein were required to submit a pre-trial statement on April 20, 1979. Instead, they sought to introduce it on April 22, 1980, after trial had already been listed and continued several times. Appellants' course of action in waiting until virtually the eve of the trial before submitting the report was prejudicial to the appellee. In addition, the fact that appellants waited until after the case had been continued numerous times leads us to believe their action was willful. Under the circumstances, we find the testimony of appellants' expert was properly precluded. Having so decided, it is unnecessary for us to examine appellants' alternative argument.

Appellants next argue that appellee failed to prove his case and therefore a compulsory non-suit should have been entered. This too is meritless.

The complaint originally set forth a case in simple breach of contract. Eventually, the pleadings were amended to include allegations of bad faith in the amended Answer and New Matter, but the allegations as originally set forth remained valid. The court found that neither party's proofs as to bad faith were valid and refused to charge on that issue. That did *not eliminate the original breach of contract issues*, which were also fully litigated.

■ A case, obviously, may be tried on several causes of action. The jury found, on a preponderance of the evidence, that it was appellants' acts or failures to act that caused the breach in the instant matter. That breach was a simple breach of contractual terms, which certainly remained a triable issue in the case. The trial judge properly denied compulsory non-suit and permitted the jury to consider recovery based on breach of contract alone.

Appellants next allege that error was committed in permitting testimony as to the parol agreements of the parties prior to the signing of the agreement.

■ It is true that the agreement does have an integration clause stating that the contract documents "constitute the entire agreement" except for "modifications issued after execution." It is also true that parol evidence was admitted as to prior and contemporaneous matters pertaining to bad faith and fraud issues. The lattitude permitted on such issues is customarily very broad. 16 PLE "Fraud," § 27, p. 418, "Admissibility of Evidence."

The trial court did not, however, find that sufficient evidence of anything other than simple breach of contract had been proved. The jury was instructed to consider only breach-of-contract, and the lower court's opinion clearly bases the decision in the matter solely upon testimony proving failure of the appellants to follow the contract terms. Such questions as whose duty it was to provide construction plans or permits or funding, and who failed in performance of those duties were the focus of the court's decision.

It was proper to admit parol evidence for the purpose for which the trial judge admitted it; it was proper to ignore that evidence later and reach a judgment on the testimony as to which party failed to honor its obligations as set forth in the contract and its subsequent modification.

Appellants next allege that the court improperly instructed the jury as to burden of proof. They urge that "clear, precise and indubitable" proof was proper and not "a fair preponderance of the evidence." The case they cite to support this is not on point because it does not in fact hold that a contract that may only be modified in writing must have modifications proved by clear, precise and indubitable proof. It holds instead that *oral modifications* must be

proved. *Koeune v. State Bank*, 134 Pa.Super. 108, 4 A.2d 234 (1939).[1]

■ The instant case, as finally decided, did not incorporate *oral modifications*, but presented a simple problem of nonperformance of agreed terms. As in civil cases generally, the party having the burden of proof in a contract matter must sustain it by a "preponderance of the evidence." *McCarthy v. Scanlon*, 176 Pa. 262, 35 A. 189 (1896). The trial judge's instruction to the jury was therefore proper.

Appellants next allege that it was error for the trial court to deny their Motion for Summary Judgment Regarding Alleged Lost Profits and Overhead.

■ A court will allow summary judgment under very limited circumstances, only in "clear cases" where the right to judgment is "clear and free from doubt," and it will deny summary judgment where "facts are in dispute." See 4 *Standard Pennsylvania Practice* § 122 p. 205 and cases cited therein.

■ Under the instant facts, the wording of the language of the contract as to damages awarded for breach was quite complex and presented an undoubted factual dispute for the court's consideration. Upon review of the contract, this court discovered several questions that apparently were never, in the end, explored below. One simple example would be the meaning of the term "adjusted Guaranteed Maximum Cost" as alluded to in paragraph 15.2. Under those circumstances, it was proper for the trial court to refuse to settle the matter on summary judgment. If appellants did not thereafter persue that line of definition of the contract terms at trial, this court cannot amend the deficiency after the fact. The trial judge properly refused summary judgment.

1. This is true also of an entirely oral contract, *Miller v. Wise*, 33 Pa.Super. 589 (1907).

Appellants also assert that amendment of appellee's pleadings in January of 1980 was improperly permitted because the statute of limitations had run on the matter. Again, this objection is ill-conceived.

The statute for contract matters provides for a six-year limit, 42 Pa.C.S.A. § 5527(2). The amendment of the pleadings in the instant action merely pled bad faith in the making and keeping of agreed contract terms, so that the six-year limit for contract cases was still applicable; in January of 1980 the statute still had approximately a year and a half to run.

Appellants' argument that this situation was analogus to one in which a complaint in oral contract was amended to one of *quantum meruit* is not valid. *Quantum meruit* is a remedy based in payment for services rendered and prevention of unjust enrichment; the "contract" is one "implied in law" and not an actual contract at all. Our statutes recognize this difference in theory very clearly. An action upon an implied-in-law contract is subject to a *four* year limitation, 42 Pa.C.S.A. § 5525(4).

Had appellee here wished to amend his complaint to add a cause of action on a *quantum meruit* theory, he would have been banned by the four year limit. However, the contract in the instant matter was clearly a written one; oral and written modifications were testified to in the course of extensive pleadings and testimony, but every argument was based in contract and was subject to the six-year statutory limit. Permission to amend the pleadings was proper.

Appellants next allege error in the trial court's decisions to restrict their counsel's examination of the subcontractor who excavated the site. This man was called as a witness by both parties and was subjected to cross-examination by both.

As witness for appellee, the contractor was questioned as to appellants' failure to produce construction plans, government permits, and a promised access to a nearby site for

dumping, as well as to the amount of soil actually moved on, or removed from, the site. When, on cross, appellants attempted to question the contractor as to a possible benefit to him from the filling of a dump site, the court correctly sustained an objection that the questioning was going beyond direct examination.

Later, the contractor was called as a witness by the appellants, but careful review of the record of direct examination shows that he was never questioned as to the benefits to him of the use of the eventual dump site. Instead, direct examination was focused upon the cubic yards of dirt removed, an issue upon which he had testified to in detail while he was appellee's witness. Objection was made, and properly upheld by the trial judge as the appellants were indeed attempting to impeach their witness' prior testimony. Had appellants been prepared to vigorously attack the figures on removal of soil during cross, and likewise been prepared to explore the new material in detail in their own case, we assume they would have been permitted to do so. Under the circumstances of the testimony as it unfolded on the record, we see no error; there was no "catch 22" as alleged by appellants.

Next, appellants allege that it was improper to permit the project manager to assert the amount of damages without calling witnesses to attest to the authenticity of the bills.

However, there are times when a fact in issue may be proved by a writing *or* by other evidence; a witness may testify, and proof of the fact by writing is not a necessity. In *Mars v. Meadville Telephone Co.,* 344 Pa. 29, 23 A.2d 856 (1942), the widow of a deceased was permitted to testify as to his earnings from her own knowledge without first accounting for non-production of his record books. As in *Perry v. Ryback,* 302 Pa. 559, 153 A. 770 (1931), the court determined that the issue was not the "content of the writing" but "the amount of the earnings."

In the instant matter, the court discussed this problem at length at sidebar and displayed considerable sympathy for appellants' argument that all bills must be authenticated by a member of the firm that sent them. Counsel for appellee argued, however, that the bills represented

... a damage that was inflicted upon [appellee] because of a breach of contract in stopping the work. There is no question that these were all incurred for this project for the benefit of these defendants. He [the witness project-manager] knows whether or not they are reasonable.

. . . . .

He will describe what the materials were. Mr. Zagarelli knows what the materials were. If the document is a problem, I really don't have to use them. [sic] He can testify on his own. (R. 474a–475a)

The court stated that he considered it:

... perfectly all right for Mr. Zagarelli to testify that he paid so-and-so many dollars for this material and that they couldn't use it. That's an item of damage to him. (R. 474a)

To paraphrase the *Mars* and *Perry* courts, *supra*, the issue was not the written content of the bills but the amount of damage sustained by appellee through failure of the contract.

In any event, the project manager was closely questioned as to the expected work, the anticipated costs of a complete job, the amount of work done on order, the amount salvageable for resale or reuse, and the ultimate amount he had paid or was obligated to pay on work and materials, as well as his opinion as to the reasonableness of the payments. Although the bills were used to refresh his memory at times, his testimony was from his own recollection. We agree with the trial judge that the contractor was a competent witness for this purpose.

■■■■■■ Finally, appellants argue that the court erred in denying them a continuance after granting appellee a chance to amend his pleadings.

The recognized principle of practice is that the granting or refusal of a continuance rests in the discretion of the trial court; its determination will not be overturned on appeal except in clear cases of abuse or manifest error. 4 *Standard Pennsylvania Practice,* p. 617 (1964).

This trial had been delayed many times previously. The date upon which the trial was again continued and permission for amendment of pleadings given was January 8, 1980. The amended pleadings were filed January 25, 1980. The content of these pleadings, as noted *supra,* was amended to make a direct response to the allegations of bad faith in appellee's own pleadings. The issues were long since known. The new trial was not in fact held for almost another one-half year, and appellants clearly had time to prepare even without a formal continuance. Abuse or manifest error cannot be found.

We affirm the order of the lower court.

WIEAND, J., concurs in the result.