## Luden's, Inc. v. Irwin & Leighton, Inc.

BRODY, *J.*, July 12, 1983—

*Joseph Neff Ewing*, for plaintiff Luden's, Inc.

*Medford J. Brown, 3rd* and *Richard K. Masterson*, for defendant Irwin & Leighton, Inc.

*Jack F. Ream* and *William F. Fox, Jr.*, for defendant Long Service Co., Inc.

*Lloyd J. Schumaker*, for defendant The Ballinger Company.

*John Patrick Kelley* and *Catherine N. Jasons*, for defendant Owens-Corning Fiberglas Corp.

*Dean F. Murtagh*, for defendant Dow Chemical Corp.

*Gilbert P. High, Jr.*, for defendant B. F. Goodrich Co., Inc.

## I. PROCEDURAL AND FACTUAL BACKGROUND

At issue here are the motions for summary judgment filed by five of defendants.[1] Defendants claim that plaintiff's causes of action in assumpsit and trespass are barred by the statute of limitations in effect at the time that the complaints were filed. This court agrees, and grants the motions for summary judgment in favor of all five defendants.[2]

---

1. Motions for summary judgment were filed against plaintiff by the following five defendants: Irwin & Leighton, Inc., Long Service Co., Inc., Owens-Corning Fiberglas Corporation (improperly designated as Owens-Corning Fiberglas Sales Corporation), B. F. Goodrich Co. (formerly known as Lexsuco) and Dow Chemical Co.

2. On page 2 of plaintiff's brief against the summary judgment motions filed by Owens-Corning Fiberglas Corporation and the Dow Chemical Company, and on page two of

This case arose from problems incurred by plaintiff building owner subsequent to the erection of "Building 9" by defendant general construction contractor Irwin & Leighton, Inc., and the installation of the "Building 9" roof by defendant subcontractor Long Service Co., Inc. Plaintiff Luden's, Inc. and defendant Irwin & Leighton, Inc. had entered into a construction contract on September 29, 1967. The roof was installed in the spring of 1969, and soon thereafter, plaintiff discovered leaks in it. Despite efforts by the contractor and subcontractor to repair the roof, it continued to leak. Finally, in mid-February 1975, the roof was replaced. It was at this point, on February 16, 1975, that plaintiff first learned of the latent structural defects which occasioned its complaint. (Answer of Luden's, Inc. to Second Set of Interrogatories of Long Service Co., Inc. dated March 10, 1982. Answer to Question Q.1.a; Brief of Plaintiff Contra Motion for Summary Judgment.)

Plaintiff filed the present actions in assumpsit and trespass against defendant Irwin & Leighton, Inc. in a single complaint on February 1, 1980. Subsequently, Irwin & Leighton joined as an additional defendant Long Service, Inc., which in turn joined additional defendants the Ballinger Company, architects, and the building materials suppliers, Owens-Corning Fiberglas Corporation, B. F. Goodrich Co. and Dow Chemical Co.

---

plaintiff's brief against the summary judgment motion filed by B. F. Goodrich Co., Inc., plaintiff concedes that the granting of a summary judgment motion against it in favor of defendant Irwin & Leighton, Inc., must result in the granting of similar judgments against the additional defendants.

## II. DISCUSSION

### A. Summary Judgment

A motion for summary judgment shall be sustained if the pleadings, depositions, answers to interrogatories, and admissions on file show that there is no genuine issue as to any material fact. Pa.R.C.P. 1035(b). In the present case, no genuine issue of fact exists. See Royal-Globe v. Hauck Mfg. Co., 233 Pa. Super. 248, 335 A.2d 460 (1975). The only issues before the court are questions of law: (1) when the statute of limitations period began to run; (2) which statute of limitations governs the assumpsit action; and (3) which statute of limitations governs the trespass action.

### B. Statute of Limitations

1. Date on Which Statutory Period Began to Run

Under Pennsylvania law, the statute of limitations period governing a cause of action involving latent defects under a construction contract begins to run when the defect is first discovered by plaintiff, or when the defect should have been discovered by plaintiff, whichever is earlier. A. J. Aberman, Inc. v. Funk Bldg. Corp., 278 Pa. Super. 385, 420 A.2d 594 (1980). After examining the record in the light most favorable to the non-moving party, Petraglia v. American Motorists Insurance Co., 284 Pa. Super. 1, 424 A.2d 1360 (1981), aff'd mem., 498 Pa. 33, 444 A.2d 653 (1982), this court has determined that the statute began running on February 16, 1975, the date on which plaintiff first discovered the latent defect.

2. Cause of Action in Assumpsit

a. Overview

Even though the present causes of action accrued in 1975, the applicable statute is that which was in

effect at the time the complaint was filed. See Ulloa v. City of Philadelphia, 95 F.R.D. 109 (E.D. Pa. 1982).

Defendants and plaintiff disagree as to whether 42 Pa.C.S.A. §5525(1) or 42 Pa.C.S.A. §5527(2), both of which were in force when the complaint was filed, governs the action in assumpsit. Section 5525, as it existed at the time the instant action was filed, provided a four year limitations period.

§5525 Four year limitation.

The following actions and proceedings must be commenced within four years:

(1) An action upon a contract, under seal or otherwise, for the sale, construction or furnishing of tangible personal property or fixtures.

(2) Any action subject to Section 2-725 (relating to statute of limitations in contracts for sale) of the Act of April 6, 1953 (P.L.E. 3, No. 1), known as the "Uniform Commercial Code."

(3) An action upon an express contract not founded upon an instrument in writing.

(4) An action upon a contract implied in law, except an action subject to another limitation specified in this subchapter.

Section 5527(2) provided a six year statute of limitations:

§5527 Six year limitation.

The following actions and proceedings must be commenced within six years:

. . .

(2) An action upon a contract, obligation or liability founded upon a bond, note or other instrument in writing, except an action subject to another limitation specified in this subchapter. Where an instrument is payable upon demand, the time within which an action or proceeding on it must be commenced shall be computed from the later of either

demand or any payment of principal or of interest on the instrument.

If a four year limitations period were in force when plaintiff filed, the complaint would be time-barred, since plaintiff failed to file prior to February 16, 1979. However, if the six year limitations period were in force, plaintiff's complaint would be timely filed, since February 1, 1980, the date the complaint was filed, preceded February 16, 1981, the cut-off date for filing under a six year statute.

b. Analysis

Over the past three decades, the Pennsylvania General Assembly has shortened and rendered uniform the statute of limitations period for actions in assumpsit. This progression dates from 1953, when the Assembly, taking note of modern commercial practice, terminated the applicability of the general six-year assumpsit limitations period (12 P.S. §31, Act of March 27, 1793, 1 Sm.L. 76, §1.) to sales contracts by enacting Article 2 of the Uniform Commercial Code. 12A P.S. §2-725 (Purdon 1970), Act of April 6, 1953, P.L. 3, §2, §2-725 (reenacted Oct. 2, 1959, P.L. 1023, §2; recodified at 13 Pa.C.S.A. §2725 (Purdon 1983), Act of Nov. 1, 1979, P.L. 255, No. 86, §1). Article 2 "[took] sales contracts out of the general laws limiting the time for commencing contractual actions and [selected] a four year period as the most appropriate to modern business practice." Pennsylvania Uniform Commercial Code §2-725 Comment at 583 (1970). One of the Assembly's goals in reducing the limitations period was the preservation of evidence, especially impermanent evidence as to workmanship and the condition of the goods which were sold. Since such evidence was unwritten, and therefore less likely to remain immutable, the Assembly felt that it necessitated an earlier trial than was required in cases involving

only written evidence. Pennsylvania Uniform Commercial Code Commentary, at 12A P.S. xxxviii (1970).

By reducing the limitations period for causes of action based on a sales contract, however, the General Assembly also created a discrepancy between the periods which governed various causes of action in assumpsit. Under 12 P.S. §31 and 12A P.S. §2-725, for example, two different statutes of limitations would have applied to the case at bar. A four year period would have applied to an action that the building owner might have brought directly against the building materials suppliers on a sales contract, and a six year period would have applied to an action by the building owner against the builders on a construction contract. This discrepancy between the old limitations periods was recognized by the Superior Court in 1975. DeMatteo v. White, et al., 233 Pa. Super. 339, 336 A.2d 355 (1975).

In DeMatteo, each of the three plaintiffs had entered into a contract with defendant Domer White for construction of their separate residences. Surface brick, which had been manufactured by defendant Haines and sold to each plaintiff by defendant Rega, formed the exterior wall of each house. When the bricks were found defective, each homeowner sued White, the construction contractor, and Haines and Rega, the building materials suppliers.

The trial court entered judgment on the pleadings in favor of all three defendants. On appeal the Superior Court affirmed the judgment in favor of Rega but vacated the judgment in favor of White. (The judgment in favor of Haines was vacated on other grounds.) In explaining its divergent treatment of Rega and White, the court stated that under the law in effect in 1975, the statute of limitations governing the sales contract between DeMatteo and

Rega for the bricks was two years shorter than the period which governed the construction contract between DeMatteo and White. Plaintiff had initiated a timely suit against the construction contractor, but not against the building material supplier.

There was no policy rationale for the difference in the length of the statutory periods. In fact, in 1976, just one year after DeMatteo, the legislature corrected this discrepancy when it enacted the Judicial Code. 42 Pa.C.S.A. §101 et seq. (Purdon 1981), Act of July 9, 1976, P.L. 586, No. 142, §2, effective June 27, 1978. Continuing the progression towards a shorter uniform limitations period, the legislature explicitly set forth in §5525(2) of Title 42 the U.C.C.'s four year period governing contracts for sale, and extended the applicability of the four year period to other actions in assumpsit that involved the same issues of unwritten, nonpermanent evidence. In particular, the legislature stated in §5525(1) that a four year period was applicable to "[a]n action upon a contract, under seal or otherwise, for the sale, construction or furnishing of tangible personal property or fixtures."

This court holds that §5525(1) applies to the present construction contract case, as specifically stated in Crisante v. J. H. Beers, Inc., 297 Pa. Super. 337, 341 n. 5, 443 A.2d 1150, 1152 n.5 (1982). Such a holding follows from the expansive reading which the Crisante Court gave to §5525(4) in order to effectuate the 1976 legislature's intent to create a uniform statute of limitations. The result furthers the intent triggered by the 1953 legislature to shorten the statute of limitations period for those actions in which latent, unwritten evidence of workmanship is crucial. Furthermore, our holding is consistent with the language of §5525(1), which focuses

on contracts for construction where tangible personal property, such as the insulation and other building materials is used.

The General Assembly's goal of creating a uniform statute of limitations period in actions arising from the same facts was first judicially recognized by a United States District Court construing Pennsylvania law in Hooker v. Hammer, 497 F. Supp. 152 (W.D. Pa. 1980). The federal court had to decide whether §5525 was applicable to an action for breach of a marital property settlement agreement. Recognizing its obligation, when weighing "undeclared" or new Pennsylvania law, to predict how the Pennsylvania Supreme Court would resolve the issue, the federal court, in reaching its decision, stated that under "the current [1976] provisions of Section 5525, both types of actions [in DeMatteo] would be treated the same and subject to a four year limitations period." Hooker, supra, at 154.

The uniformity of limitations periods was substantiated in a parallel interpretation by the Pennsylvania Superior Court. Crisante, supra. In Crisante, a homeowner sued a construction company which had contracted with the Pennsylvania Department of Transportation to repair a state highway in front of her home. Plaintiff had alleged negligent infliction of damages to real property. The trial court applied §5524(4), the statute of limitations for trespass of real property, and dismissed the complaint. Plaintiff appealed, claiming the §5524(4) did not bar her action because §5524(4) did not apply to causes of action alleging only negligence. The Superior Court affirmed the dismissal.

Judge Cavanaugh, writing for the Crisante Court, emphasized the intent of the drafters of the Judicial Code to create uniform periods of limitations:

A reading of the various statutes of limitations in the Judicial Code indicates that the drafters, in keeping with this purpose, established a single period for related actions wherever possible. Crisante, supra, at 341, 443 A.2d at 1152.

Judge Cavanaugh stated further that it would be regressive to conclude that the General Assembly intended distinct limitations for intentional and negligent acts. It is quite clear that the General Assembly used the Code "as a vehicle to rationalize and simplify the statutes of limitation." P.B.A. Judicial Code Explanation, 42 Pa. C.S.A. xv (1981). It would likewise be regressive to hold that Luden's causes of action arising from the defective roof are governed by different statutes of limitations. Holding that Luden's had the same amount of time to sue the construction contractors as Luden's had to sue the building materials suppliers under §5525(2) is consistent with the intent of the General Assembly to create uniform periods of limitations.

This court rejects the argument made by plaintiff based upon Ragnar Benson, Inc. v. Bethel Mart Assoc.,____Pa. Super.____, 454 A.2d 599 (1982), which decision was rendered subsequent to Crisante, that the present assumpsit action is governed by the six year statute of limitations. In Ragnar, the plaintiff Ragnar Benson, Inc., a construction company, entered into a contract with defendant Bethel Mart Associates, et al. in July 1975. Plaintiff was to build a shopping mall. After numerous delays, work was begun in December, 1975. However, defendant ordered all work stopped on May 14, 1976. On November 12, 1976, plaintiff filed a complaint in assumpsit against the shopping mall owner, "alleging a typical case of failure of the owner to perform on a construction contract." Ragnar, supra, at 600. Plainiff filed an amended complaint

on January 25, 1980. The jury returned a verdict for the plaintiff. The defendant raised numerous issues on appeal, but the Superior Court rejected all of them and affirmed the trial court. One of the issues on which the appellate court affirmed for plaintiff was a question regarding the timeliness of the amendment to the complaint. Defendant claimed that the amendment was barred by a four year statute of limitations. The Superior Court held that the §5527(2) six years limitations period governed the assumpsit action.

Emphasizing that a construction contract was at issue in Ragnar, and that a construction contract is also at issue herein, Luden's argues that Ragnar's six year limitations period should be applied to its own claim. Such an argument misconstrues the significance of the construction in Ragnar. Ragnar "presented a simple problem of nonperformance of agreed terms." Ragnar, supra, at 602. The court's holding in Ragnar was unrelated to the fact that the cause of action was based on a construction contract. Had the contract, for example, been for employment or for the delivery of water, instead of for construction, the six year statute still would have applied. At issue in Ragnar was the defendant's simple repudiation of the contract and its subsequent failure to perform. The nature of the contract was irrelevant. Ragnar's claim was focused solely within the four corners of the contract, Ragnar, supra at 603; it did not focus on the workmanship or conduct of the defendant.

The claim herein is directly opposite from the claim in Ragnar. Luden's complaint does not focus within the four corners of the contract; it is not concerned with simple nonperformance. Instead, at issue in the case at bar is the workmanship or conduct of the defendant, who did render a performance,

even if that performance was allegedly deficient. Luden's complaint involves going outside the four corners of the contract, and focusing on impermanent, unwritten evidence concerning the workmanship or condition of the defendant construction contractor's performance.

Claims like Luden's which, in Judge Cavanaugh's words, are "based on conduct, and hence heavily relying on unwritten [impermanent] evidence, should have relatively short statutes of limitations, so as to bring them to trial (after allowance for pretrial delays) before memories have faded." Crisante, supra, at 341, 443 A.2 at 1152 (quoting 42 Pa.C.S.A. xvi-xvii (Purdon 1981)). (Emphasis, which was added by the Crisante Court, has been deleted.) However, claims like Ragnar's may be governed by a six year statute of limitations because they are based on a written contract, which, by its very nature, is concrete and permanent. Ragnar's cause of action was not subject to the weakness of human memory; it was based on evidence which had been preserved for four and one-half years, and which easily could have been preserved for the entire six year period.

Judge Cavanaugh's distinction for statute of limitations purposes between causes of action based on written evidence and those based on unwritten, impermanent evidence such as conduct both echoed the intent of the 1953 General Assembly when it enacted the U.C.C. to preserve evidence, and anticipated the recognition of the distinction by the Ragnar Court. Judge Montemuro, writing for the Ragnar Court, recognized the distinction between the static nature of written evidence and the non-static nature of unwritten evidence for purposes of determining the correct statute of limitations. He rejected defendant's attempt to characterize plaintiff's amendment as one of quantum meruit, which

is based on conduct, and therefore subject to a four year statute of limitations:

Quantum meruit is a remedy based on payment for services rendered and prevention of unjust enrichment; the "contract" is one "implied in law" and not an actual contract at all. Our statutes recognize this difference in theory very clearly. An action upon an implied-in-law contract is subject to a four year limitation. 42 Pa.C.S.A. §5525(4).

Had appellee here wished to amend his complaint to add a cause of action on a quantum meruit theory, he would have been banned by the four year limit. However, the contract in the instant matter was clearly a written one; oral and written modifications were testified to in the course of extensive pleadings and testimony, but every argument was based in contract and was subject to the six-year statutory limit. Ragnar, supra, at 603.

In holding that the Judicial Code's four year statute of limitations period bars the present case, this court also holds that plaintiff's complaint is barred by the code's saving clause:

Section 25.

(a) Any civil action or proceeding:

(1) at the time theretofore limited by statute for the commencement of which is reduced by any provision of this act; and

(2) which is not fully barred by statute on the day prior to the effective date of this act; may be commenced within one year after the effective date of this act, or within the period heretofore limited by statute, whichever is less, notwithstanding any provisions of Subchapter B of Chapter 55 of Title 42 (relating to civil actions and proceedings) or any other provision of this act providing a shorter limitation.

Under the saving clause, plaintiff's complaint would have been timely had it been filed by June 27, 1979. Since plaintiff did not file until February 1, 1980, §25 is of no help to Luden's.

Furthermore, to alleviate any doubt as to the application of the four year limitations period to practically all contract cases, the General Assembly in 1982 severely curtailed the catch-all aspect of §5527(2). Taking its final step in the progression to a shorter, uniform limitations period, the legislature added four subsections to §5525, two of which are as follows:

§5525 Four year limitation.

The following actions and proceedings must be commenced within four years:

(7) An action upon a negotiable or non-negotiable bond, note or other similar instrument in writing. Where such an instrument is payable upon demand, the time within which an action on it must be commenced shall be computed from the later of either demand or any payment of principal of or interest on the instrument.

(8) An action upon a contract, obligation or liability founded upon a writing not specified in paragraph (7), under seal or otherwise, except an action subject to another limitation specified in this subchapter. Act of Dec. 20, 1982, P.L. 1409, No. 326, art. II, §201.

Although these provisions were not in effect when the plaintiff filed its complaint, and were therefore not taken into consideration by this court, they do clarify the intent of the General Assembly.

3. Trespass

Under the rationale cited above, the Judicial Code also effected a uniform statute of limitations for tort claims. Crisante, supra. In particular, 42 Pa. C.S.A. §5524(4) (Purdon 1981) requires that an action for

trespass of real property be commenced within two years. Clearly, since plaintiff's action in assumpsit was barred because it was not brought within four years, plaintiff's claim in trespass must also be barred, since it was not brought within two years.

## ORDER

And now, this July 12, 1983, after oral argument and consideration of briefs, motions for summary judgment are granted in favor of Irwin & Leighton, Inc., Long Service Co., Inc., Owens-Corning Fiberglas Corporation (improperly designated as Owens-Corning Fiberglas Sales Corporation), B.F. Goodrich Co., Inc. (formerly known as Lexsuco) and Dow Chemical Co.

Plaintiff's complaint against above named five defendants is dismissed.