J-A06021-26

**ON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOHN MEEK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DON TOMLINS, T/D/B/A DECKED | : | |
| OUT BY DON | : | |
| | : | No. 1039 WDA 2025 |
| Appellant | : | |

Appeal from the Judgment Entered November 7, 2025
In the Court of Common Pleas of Greene County Civil Division at No(s):
951 A.D. 2019

BEFORE:  OLSON, J., MURRAY, J., and BECK, J.

MEMORANDUM BY MURRAY, J.:                    **FILED: March 25, 2026**

Don Tomlins, t/d/b/a Decked Out By Don (Appellant), appeals from the judgment entered against him and in favor of John Meek (Meek), following a non-jury trial on Meek's breach of contract claim.  We affirm.

On September 30, 2021, Meek filed a complaint asserting a claim for breach of contract against Appellant, relating to work Appellant performed on Meek's residence (the residence or house) pursuant to a November 1, 2017, agreement (the Agreement).[1]  Appellant agreed to install siding, soffit, fascia, and gutters on the residence for $18,675.00.  In early 2018, Appellant

---

[1] Meek's complaint also asserted claims for negligence and breach of implied warranty.  The trial court excluded those claims in connection with motions *in limine* filed by Appellant, and they are not at issue on appeal.  *See* Order 8/14/24; Order, 6/17/24.

completed the job and Meek paid him. Shortly thereafter, Meek alleged, the components Appellant installed began warping, buckling, loosening, and detaching, as a result of Appellant's "subpar, negligent work[.]" Complaint, 9/30/21, ¶ 11. Meek obtained from another contractor "an estimate of $19,602.87 to fix, repair, and re-install the work previously done by [Appellant]." *Id.*

Appellant filed an answer and new matter. After prevailing at a compulsory arbitration hearing, Meek appealed the arbitrators' award to the trial court. On July 1, 2025, the matter proceeded to a non-jury trial. We summarize the evidence adduced at trial as follows.

Meek testified that, on August 22, 2017, a tornado caused significant damage to his residence. N.T., 7/1/25, at 10. On November 1, 2017, Meek and Appellant entered into the Agreement, whereby Appellant agreed to install siding, soffit, fascia, and gutters for $18,675.00.[2] *Id.* at 10-12. The Agreement provided, in pertinent part, as follows: "All work to be completed in a substantial workmanlike manner according to specifications submitted, per standard practices." Exhibit 1 (Agreement, 11/1/17) at 2 (unpaginated). Meek testified that Appellant completed the work in January or February 2018, and Meek paid Appellant $18,675.00. N.T., 7/1/25, at 13, 15, 19.

---

[2] By a separate agreement, Meek engaged Appellant to replace his damaged deck for $55,000.00. N.T., 7/1/25, at 10-11, 14. Appellant completed the deck project before the siding project, and Meek duly paid Appellant. *Id.* at 14, 18. Meek's claims do not involve the deck project. *Id.* at 13.

Meek testified that by early spring 2018, he observed significant problems with the components Appellant installed. *Id.* at 17-19. Meek introduced into evidence a set of 16 photos he took within several months after Appellant completed the work. *Id.* at 17-18; *see also* Exhibit 3 (2018 photos). Meek described the photos collectively as showing the following:

> Siding at all corners, all sides of the house that is buckling, the trim has fallen off, the siding was cracked when it was installed. J-channel [(*i.e.*, siding trim)] was never straight, was never secured. Siding had not been secured, it was held on with some type of white caulking and there [are] numerous pieces … that are buckling.

N.T., 7/1/25, at 17. Meek also described each individual photo. *See id.* at 19-23 (Meek describing, *inter alia*, "siding that's buckling above the window, and the upper trim had fallen off the house"; "siding [that] is buckled and you can see where it's loose"; "right above the driveway, that's where the siding was always cracked"; "J-channel … on the left side of the house … [that] was never secured"; "pieces of siding that are falling off that have the white silicone or some type of adhesive on them"; "you can see all the siding [on one side of the house] has buckled and it is also loose, and all the J-channel has fallen off the top"; "on the back side of the house, all the J-channel has fallen off the top and siding has fallen off the house," and "all the siding is buckling at the windows"; on "the front side of the house … all the J-channel is falling down and the siding is … loose"; "J-channel is loose" and "siding [is] buckling and … detaching from the building"; siding is "loose at the ends, it's buckling, and … there [are] ripples in it"); *see also* Exhibit 3.

Meek agreed that the problems were "pervasive" and not "restricted to any one particular corner of the house[.]" N.T., 7/1/25, at 24. Meek testified that the problems exist on all sides of the house, including "all the tops of the windows" and "anything that has got any type of sun on it[,] from morning sun to the evening sun, it has all been buckled and [it] warps." *Id.*

Meek testified that, at the time of trial, the condition of Appellant's workmanship continued to deteriorate, and the house looks "worse now" than it did in the 2018 photos. *Id.* at 24, 26. Meek testified that "[c]urrently … all the soffit is falling off the front" of the house. *Id.* at 26. Meek introduced into evidence two photos he took in 2024. *See id.* at 24-26; *see also* Exhibit 4 (2024 photos).[3] Meek described one of the photos as showing "all the pieces that have been gathered from all the siding that's fallen off the house," including "J-channel that had been … siliconed up with some type of white … adhesive or silicone[.]" N.T., 7/1/25, at 25. Meek described the second photo as showing where additional siding had fallen off the house. *Id.*

Meek testified that, in the summer of 2018, he sent text messages to Appellant, attaching the 2018 photos and advising that the siding was

_____

[3] As discussed below in connection with Appellant's third issue, the trial court admitted these photos over Appellant's objection. *See* N.T., 7/1/25, at 15-16, 24, 26. In addition to objecting to their admission at trial, Appellant filed a pre-trial motion *in limine* seeking to exclude the 2024 photos. *See* Motion *in Limine* to Exclude Testimony and/or Exhibits Regarding Any Alleged Damage to Plaintiff's Home in 2024, 6/7/24. The trial court denied the motion. *See* Order, 6/17/24.

"buckling," "falling off and starting to loosen up." Exhibit 7 (text messages); *see also* N.T., 7/1/25, at 27. Appellant responded that he would send an employee to Meek's house and that it "[s]houldn't take him long to twe[a]k stuff." Exhibit 7. However, Appellant stated it would be "a while" before they could get to it because his business was "major backed up." *Id.* Meek testified that Appellant thereafter became unresponsive, and never sent anyone to the house. N.T., 7/1/25, at 27-28.

Meek testified that Appellant failed to complete the work according to Meek's expectations and as warranted in the Agreement. *Id.* at 13, 33. Meek agreed that he did not expect the siding to last only "a few months before it would start to fall off and come apart[.]" *Id.* at 39. Rather, Meek testified he expected that the work "would last my lifetime." *Id.* Meek agreed that he communicated his dissatisfaction to Appellant, but Appellant "never came back to fix it[.]" *Id.*

Meek testified that in August 2021, he solicited an estimate from Wayne Lumber and Supply (Wayne Lumber) for the replacement and repair of the siding previously installed by Appellant. *Id.* at 28-31. Wayne Lumber provided an estimate of $19,602.87. *See* Exhibit 5 (August 2021 estimate). In February 2024, Wayne Lumber reaffirmed its $19,602.87 estimate. *See* Exhibit 6 (February 2024 estimate); N.T., 7/5/25, at 30-31. Meek testified that he intends to engage Wayne Lumber to perform the work, but does not have the money to do so. *Id.* at 31.

Robert Mooney (Mooney), co-owner of Wayne Lumber, testified that he visited Meek's residence before preparing the August 2021 estimate. *Id.* at 41, 49. Mooney testified that the estimate covered replacement siding for the entire house, as well as some gutter repair. *Id.* at 44, 49; *see also* Exhibit 5 (estimate including $515.41 for labor and materials related to gutter repair, with the remaining $19,087.46 related to siding). Mooney did not recall observing significant damage to the soffit or fascia, and his estimate did not include those items. N.T., 7/1/25, at 44-45, 49.

After reviewing the 2018 photos, Mooney testified that Wayne Lumber would not leave a job in the condition depicted in the photos. *Id.* at 46. Mooney agreed that if he installed siding and, a few months later, it was in the condition depicted in the photos, he would not consider that acceptable, but would perform additional repairs. *Id.* Mooney agreed that "the work depicted in the photos" is not "consistent with the quality of work performed by Wayne Lumber[.]" *Id.*

On cross-examination, Mooney agreed that his estimate called for replacing all the siding on Meek's house, rather than replacing only the damaged portions. *Id.* at 49-50. Mooney testified that "the siding was in such disrepair" that he would not attempt to "mix and match it." *Id.* at 50. Mooney testified that replacing only damaged siding would "[n]ot necessarily" cost less, because he would "still [have to] pull all the siding off" and "make sure I had correct fastening and a repair[.]" *Id.*

On redirect, Mooney further explained why he considered it necessary to replace all the siding:

> One [factor] is age of the siding, right, so a new piece isn't going to match, … but when I look at some of these pictures here, there had to be a reason why the siding is coming off. Was it fastened correctly, you know, was it a manufacturing, you know, problem. So you can replace one piece on certain jobs, and certain jobs I wouldn't recommend just one piece.

*Id.* at 51. Mooney did not recommend piecemeal replacement on Meek's house because of "the way [the siding is] coming off. I would have to look at the substructure underneath to make sure it was fastened correctly and make sure that it didn't happen again." *Id.*

On recross-examination, Appellant's counsel asked Mooney if he could tell why the siding was in the condition it was in when he observed it, whether "it was fastened incorrectly or … it was a manufacturing defect[?]" *Id.* at 52. Mooney answered as follows:

> So, the places that it came off … on the upper sides and stuff like that, I feel that it was not fastened correctly, the trim and stuff like that. There was one place on the house that when I originally—why it warped, if it was me and I would have done it, I probably would have t[aken] a piece off and went to the manufacturer and said, is there something wrong with this. But the rest of the places where it just came off, … I thought that was craftsmanship, in my opinion.

*Id.*

Appellant testified that "one of my guys and his helper did" the work on Meek's house, and Appellant "stopped by as often as [he] could" to supervise

the project. *Id.* at 61, 67. Appellant testified that he observed no problems with the siding at the time of the project's completion. *Id.* at 58.

Regarding the condition of the siding depicted in the 2018 photos, Appellant testified that "there is no way of knowing how that happened." *Id.* at 66. Appellant testified that, "generally speaking[,] when siding falls off a house or gets loose, it's wind or storm damage." *Id.* at 62-63. Appellant suggested that "once a piece of siding falls off and you leave it like that, more damage can occur because wind starts to loosen things up." *Id.* at 66; *see also id.* at 77 (when asked about the problems shown in the 2018 photos, Appellant testified "[t]hat is because a couple pieces of siding were left off and then once the wind gets behind there, it exponentially gets worse.").

Asked about warped siding, Appellant testified "[t]hat could have been caused by a lot of things." *Id.* at 76. Acknowledging one of the 2018 photos showed siding that was "a little warped," Appellant suggested "that could be the wall bowing out a little bit." *Id.* at 63; *see also id.* (Appellant testifying that "when houses are built, they are not [a] perfect plane, you know, unless it's steel."). Asked about cracked siding, Appellant suggested "[t]hat could be one of [Meek's] kids hitting it with the baseball, anything could have caused that…." *Id.* at 77.

Appellant testified that the problems with Meek's siding were "very, very minor[.]" *Id.* at 74; *see also id.* at 81 (Appellant testifying, "If you knew how minor it was, you would be laughing about it right now."). Regarding

pieces of siding that fell off, Appellant testified "it would have taken two seconds … to snap those pieces back in." *Id.* at 76. Appellant agreed that warped pieces of siding would have to be replaced. *Id.* Appellant testified that "it would probably take four hours to fix the siding on [Meek's] house." *Id.* at 60; *see also id.* (Appellant testifying he would charge about $700 to repair the siding).

Appellant agreed that Meek advised him via text message about problems with the siding, and Appellant responded that he would send someone to look at it. *Id.* at 70-73. Appellant testified that he never sent anyone because he "told [Meek] how to snap" the siding back in place, and he "assumed [Meek] took care of it[.]" *Id.* at 74. Appellant agreed that Meek never told him the problem was fixed or that he no longer needed to send anyone. *Id.* at 80. Appellant also testified that he did not send anyone "[b]ecause [Meek] never called me back." *Id.* at 77. However, Appellant agreed he did not respond to Meek's last text message for over nine months. *Id.* at 75; *see also* Exhibit 7 (Meek texting on August 2, 2018, "All I am asking for is a response"; Appellant replying on May 31, 2019, "Give me a call when [you] can").[4] Appellant also testified that he would have gone back to Meek's house if Meek had not filed the instant lawsuit. N.T., 7/1/25, at 67

_____

[4] Meek initially filed the instant claim before a magisterial district judge on May 30, 2019. *See* Notice of Appeal From Magisterial District Judge Judgment, 11/14/19, Attachment (notice of magisterial district judge's October 16, 2019, judgment in Meek's favor).

(Appellant testifying, "I told [Meek] I was going to go back there, and then next thing you know, this [lawsuit] happens.").

At the trial's conclusion, the trial court found that Meek had met his burden of proof, stating, "I'm convinced that the work was not done in a workmanlike manner." *Id.* at 86-87. The court also found that Wayne Lumber's estimate was appropriate, and announced a verdict in Meek's favor in the amount of $19,602.87. *Id.*

On July 10, 2025, Appellant timely filed a post-trial motion for judgment notwithstanding the verdict (JNOV), arguing the evidence was insufficient to support Meek's claim. On the same date, Appellant timely filed a post-trial motion for a new trial, asserting the verdict was against the weight of the evidence. On July 16, 2025, the trial court entered orders denying both post-trial motions.

Appellant timely appealed.[5] Appellant and the trial court have complied with Pa.R.A.P. 1925. Appellant presents three questions for our review:

_____

[5] Appellant purported to appeal from the orders denying his post-trial motions. On November 3, 2025, this Court directed Appellant to praecipe the trial court to enter judgment on its verdict, noting that the entry of judgment is a prerequisite to the exercise of this Court's jurisdiction. *See* Order, 11/3/25; *see also Johnston the Florist, Inc. v. TEDCO Const. Corp.*, 657 A.2d 511, 514 (Pa. Super. 1995) (*en banc*) (where an "appeal was filed prior to the entry of judgment, it is clear that jurisdiction in appellate courts may be perfected … upon the docketing of a final judgment."). Appellant thereafter filed the appropriate praecipe, and the trial court entered judgment on November 7, 2025. We have revised the caption to reflect that the appeal lies from the entry of judgment.

1. Whether the trial court erred when it ruled that [Meek] set forth sufficient evidence to support his claims?

2. Whether the trial court erred when it ruled that its verdict was supported by the weight of the evidence?

3. Whether the trial court erred when it admitted testimony and exhibits relating to damage to [Meek's] home which allegedly occurred in 2024?

Appellant's Brief at 7 (capitalization modified).

In his first issue, Appellant argues Meek presented insufficient evidence to support his claim. Appellant's Brief at 13-15. Appellant asserts Mooney testified "that at least some of the damage to" Meek's house "could have been caused by a manufacturer's defect." *Id.* at 14 (citing N.T., 7/1/25, at 52-53). Appellant maintains that Mooney "could not say with certainty that the damage … was caused by" Appellant. *Id.* at 15. Appellant argues that, in his own testimony, "he could not specifically identify the cause of the damage…." *Id.* (citing N.T., 7/1/25, at 59-60, 62-63, 66, 77). Appellant asserts that, "[w]ithout conclusive evidence that [Appellant] improperly installed the siding," Meek "did not show, by a preponderance of the evidence, that [Appellant] failed to perform his obligations under the parties' contract." *Id.*

Meek counters that he was not required to prove the cause of the siding failure with "certainty," but only by a preponderance of the evidence. Meek's Brief at 15-16 (citing *Ragnar Benson, Inc. v. Bethel Mart Assocs.*, 454 A.2d 599, 602 (Pa. Super. 1982)). Meek argues that "[c]ircumstantial evidence, including the nature and timing of the failure," supports an inference

that Appellant's poor workmanship was the "probable cause of the harm." *Id.* at 17-18. Meek argues that his testimony and photographic evidence established that the siding "began to warp, separate, and detach shortly after installation[.]" *Id.* at 15. Meek also points to Mooney's testimony that the siding was not fastened correctly. *Id.* (citing N.T., 7/1/25, at 52). Meek argues "[t]his evidence, if believed (and it was [believed], as the trial court's decision makes clear)[,] easily supports the trial court's conclusion that [Appellant] breached his duty to perform in a workmanlike manner." *Id.* at 16.

"[A] challenge to the sufficiency of the evidence in a civil case is reviewed on appeal as a claim that the trial court erred in denying a motion for [JNOV.]" *Krishnan v. Cutler Grp., Inc.*, 171 A.3d 856, 880 n.14 (Pa. Super. 2017) (citation omitted). "An appellate court will reverse a trial court's denial … of a request for [JNOV] only when the trial court abused its discretion or erred as a matter of law." *Young v. Lippl*, 251 A.3d 405, 413 (Pa. Super. 2021) (citing *Rost v. Ford Motor Co.*, 151 A.3d 1032, 1042 (Pa. 2016)).

> When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the [court] could have properly

made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

**Tong-Summerford v. Abington Mem'l Hosp.**, 190 A.3d 631, 641 (Pa. Super. 2018); **see also Young**, 251 A.3d at 415 ("In reviewing a challenge to the sufficiency of the evidence, an appellate court will reject all evidence that does not support the verdict."); **Hagans v. Hosp. of the Univ. of Pennsylvania**, 343 A.3d 251, 264 (Pa. Super. 2025) ("JNOV is an extreme remedy that should only be granted in a clear case. If there is any basis upon which the [fact-finder] could have properly made its award, the denial of the motion for [JNOV] must be affirmed." (citations and quotation marks omitted)).

> When reviewing a sufficiency of the evidence claim in a civil case …, an appellate court, viewing all the evidence and reasonable inferences therefrom in the light most favorable to the verdict winner, must determine whether the evidence was sufficient to enable the fact-finder to find that all the elements of the causes of action were established by a preponderance of the evidence. Whether a claim was established under a preponderance of the evidence standard is tantamount to a more likely than not inquiry.

**Jones v. Foods on First III, Inc.**, 345 A.3d 231, 247 (Pa. Super. 2025); **see also Medina v. Green**, 348 A.3d 1113, 1117 (Pa. Super. 2025) ("A preponderance of the evidence standard is defined as the greater weight of the evidence, *i.e.*, enough to tip a scale slightly."); **Off. of Disciplinary Couns. v. Anonymous Att'y**, 331 A.3d 523, 534 (Pa. 2025) (observing that a preponderance of the evidence standard "is the lowest burden applied in civil cases.").

"The three elements needed to establish breach of contract are the existence of a contract, a breach of duty imposed by the contract, and damages." ***Kalili v. State Farm Fire & Cas. Co.***, 330 A.3d 396, 403 (Pa. Super. 2024). The instant claim involves Appellant's alleged breach of the Agreement's provision that the work "be completed in a substantial workmanlike manner…." Agreement, 11/1/17, at 2 (unpaginated).[6] "Modern jurisprudence defines 'workmanlike manner,' as 'doing the work in an ordinarily skilled manner as a skilled workman should do it.'" ***Jack Frost Constr., Inc. v. Bertothy***, 307 A.3d 638, 2023 WL 6534085, *6 n.5 (Pa. Super. 2023) (unpublished memorandum)[7] (quoting PHILIP L. BRUNER & PATRICK J. O'CONNOR, JR., BRUNER & O'CONNOR ON CONSTRUCTION LAW, § 9:77 (2022)).

Instantly, in its Rule 1925(a) opinion, the trial court analyzed Appellant's first claim as follows:

> At trial, [Meek] proved that [Appellant] performed certain work that was not satisfactory. [Meek] proved that siding on a portion of the house, and soffit and fascia on that same portion, were not installed in a workmanlike manner. [Meek] contacted [Appellant] several months after the siding was installed. [Meek] repeatedly contacted [Appellant], and [Appellant] did nothing to remedy the situation.
>
> [Meek] introduced exhibits and proved that the exterior siding was warped and/or buckling, and falling off the exterior walls. Also[,] the soffit and fascia were loose and not properly installed. [Mooney] visited [Meek's] home and prepared an

---

[6] There is no dispute as to the existence of the contract.

[7] Pursuant to Pa.R.A.P. 126(b), unpublished non-precedential decisions of this Court filed after May 1, 2019, may be cited for persuasive value.

- 14 -

estimate in the amount of $19,602.87 to replace the faulty work of [Appellant]. … Mooney expressed legitimate concerns that given the warped and loose siding, … replacement [rather than] repair was appropriate. [The trial court] agreed…. [Meek] proved liability and damages by the appropriate standard.

\* \* \*

The [trial] court considered all exhibits presented at trial, and viewed witness testimony. The parties did not dispute that there was in fact a contract. The sole issue in dispute revolved around a determination of the workmanlike manner of [Appellant's] work…. In viewing the evidence, the court ruled that there was sufficient evidence to find in favor of [Meek] and against [Appellant]. The court was convinced, and therefore determined, that [Appellant] failed to perform his duties in a workmanlike manner.

Trial Court Opinion, 9/23/25, at 2-4 (some capitalization and punctuation modified).

We agree with the trial court's analysis and conclusion. Our review confirms that the evidence, viewed in the light most favorable to Meek, was sufficient to establish that Appellant failed to perform in a workmanlike manner. The photos taken within months of the project's completion support Meek's characterization of the problems with the siding—including buckling, warping, loosening, and detaching—as "pervasive." N.T., 7/1/25, at 24; *see also* Exhibit 3. Mooney testified that significant portions of the siding were "not fastened correctly," and the problems were the result of Appellant's poor

- 15 -

"craftsmanship."  N.T., 7/1/25, at 52.[8]  Mooney further testified "the siding

was in such disrepair" that it needed to be fully replaced to provide correct

fastening "and make sure that it didn't happen again."  *Id.* at 50, 51.[9]  Viewed

under our standard of review, this evidence is sufficient to support an

inference that Appellant did not install the siding in a workmanlike manner,

and therefore breached the Agreement.  As our review confirms the evidence

provides a "basis upon which the [fact-finder] could have properly made its

_____

[8] In a footnote, Appellant's brief asserts this Court "has previously held that specialized knowledge beyond that of an ordinary layperson is necessary to determine whether a service has been performed in a workmanlike manner." Appellant's Brief at 14 n.4 (citing *Electron Energy Corp. v. Short*, 597 A.2d 175, 180 (Pa. Super. 1991)).  Contrary to Appellant's assertion, *Electron Energy Corp.* did not hold that specialized knowledge is always necessary to determine whether a service was performed in a workmanlike manner.  *See Electron Energy Corp.*, 597 A.2d at 180.  Rather, it recognized the general rule that expert testimony is necessary "when the matter is beyond the experience of the ordinary layman[.]"  *Id.* (holding expert testimony was necessary to determine whether there was a design defect in a heating and cooling system installed by an industrial engineering firm).  Instantly, Appellant develops no argument that the matter before the trial court was beyond the experience of the ordinary layman.  *See generally* Appellant's Brief; *see also Trust Under Deed of Wallace F. Ott*, 271 A.3d 409, 421 (Pa. Super. 2021) (stating that "an appellant waives any issue he fails to develop sufficiently").

[9] Appellant's reliance on Mooney's testimony regarding a potential manufacturing defect is unavailing.  Mooney testified he "probably would have" asked the manufacturer about "**one place** on the house" where siding had warped.  N.T., 7/1/25, at 52 (emphasis added).  However, Mooney also identified incorrect fastening and poor craftsmanship as the cause of the broader siding failure.  *See id.*  Even assuming *arguendo* that warping in "one place on the house" could not be attributed to Appellant's performance, Mooney's testimony that the siding's broader "disrepair" required complete replacement nevertheless sufficiently supports the same damages award.  *Id.* at 50, 52.

- 16 -

award," we must affirm the trial court's denial of Appellant's motion for JNOV.

**Hagans**, 343 A.3d at 264. Appellant's first issue merits no relief.

In his second issue, Appellant argues the verdict was "unsupported by the weight of the evidence." Appellant's Brief at 15 (capitalization modified). Appellant asserts that Meek "failed to set forth substantial evidence connecting [Appellant's] alleged poor workmanship to the damage to [] Meek's home." **Id.** at 16. Appellant relies on **Barrack v. Kolea**, 651 A.2d 149 (Pa. Super. 1994), which states as follows:

> Evidence is substantial if relevant and adequate to support a reasonable person's conclusion. Inferences of fact which are mere guesses, conjecture, or speculation will not support a verdict, however. There must be evidence upon which logically its conclusion may be based.

**Barrack**, 651 A.2d at 155 (citations, quotation marks, and brackets omitted). Appellant maintains that, "without appropriate evidence of causation," the trial court's "ruling is not reasonable and constitutes an abuse of discretion." Appellant's Brief at 16.

As this Court has observed,

> [a] motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the [fact-finder's] verdict is so contrary to the evidence as to shock one's sense of justice and the award of a

- 17 -

new trial is imperative so that right may be given another opportunity to prevail.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court[.] Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Ruff v. York Hosp.*, 257 A.3d 43, 49 (Pa. Super. 2021) (citation omitted; paragraph break modified).

Instantly, Appellant's weight argument merely rehashes his sufficiency argument. *See* Appellant's Brief at 15-16. He fails to identify the "certain facts" which purportedly outweigh the other facts, *Ruff*, 257 A.3d at 49, but instead relies on the supposed absence of evidence establishing causation. Appellant's Brief at 16. Moreover, Appellant cites no authority germane to a weight claim. *See id.* at 15-16. *Barrack*'s statement that evidence must be "substantial" enough "to support a reasonable person's conclusion" is a concept relevant to the sufficiency of the evidence, not its weight. *Barrack*, 651 A.2d at 155. For these reasons, we deem Appellant's weight claim waived. *See Kalili*, 330 A.3d at 406 ("This Court will not act as counsel and will not develop arguments on behalf of an appellant."); *Foster v. Nuffer*,

286 A.3d 279, 284 n.2 (Pa. Super. 2022) ("Failure to cite relevant legal authority constitutes waiver of the claim on appeal."); Pa.R.A.P. 2119(a) (requiring discussion and citation of pertinent authorities).

In his third issue, Appellant argues the trial court abused its discretion in admitting the 2024 photos into evidence. Appellant's Brief at 17-18. Appellant characterizes the 2024 photos as "relating to alleged damage to [Meek's house] which occurred in 2024." *Id.* at 17. Appellant argues the 2024 photos were irrelevant and unfairly prejudicial. *Id.* at 17-18 (citing, *inter alia*, Pa.R.E. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."), and **Whyte v. Robinson**, 617 A.2d 380, 383 (Pa. Super. 1992) (stating "prejudice" generally "means an undue tendency to suggest a decision on an improper basis.")). Appellant maintains that "evidence of any alleged damage to [Meek's house] which occurred in 2024 does not make [] Meek's allegations against [Appellant] more or less probable than [they] would be without the evidence." Appellant's Brief at 17-18.

Meek counters that the "challenged evidence was plainly relevant." Meek's Brief at 20. Meek argues that evidence "describing the progressive deterioration of the siding system directly informed whether [Appellant's] work complied with the contractual requirement of workmanlike performance,

and it assisted the [trial] court in determining the reasonable cost necessary to remedy the failure." *Id.* at 20-21.

When reviewing a challenge to an evidentiary ruling,

this Court defers to the trial court, and we reverse in limited circumstances. … Admission of evidence is within the sound discretion of the trial court, and we review the trial court's determinations regarding the admissibility of evidence for an abuse of discretion. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

An "abuse of discretion" is not merely an error of judgment. A trial court abuses its discretion by making a manifestly unreasonable, arbitrary, or capricious decision; by failing to apply the law; or by allowing prejudice, bias, or ill will to influence its decision.

*Calisto v. Rodgers*, 271 A.3d 877, 884-85 (Pa. Super. 2022) (*en banc*) (citations omitted).

"Relevant evidence is any evidence that 'has any tendency to make a fact more or less probable.'" *Marshall v. Brown's IA, LLC*, 213 A.3d 263, 270 (Pa. Super. 2019) (quoting Pa.R.E. 401(a)). "Relevant evidence is traditionally admissible, unless a rule applies to bar admission." *Janik v. Zoological Soc'y of Philadelphia*, 336 A.3d 257, 261 (Pa. Super. 2025) (citing Pa.R.E. 402). Trial courts "enjoy broad discretion to determine whether evidence is relevant[.]" *Hutchinson v. Verstraeten*, 304 A.3d 1268, 1274 (Pa. Super. 2023).

Instantly, in its order denying Appellant's pre-trial motion *in limine* to exclude the 2024 photos, the trial court stated that Appellant's arguments

about the photos "go to the weight of the evidence" rather than its admissibility. Order, 6/17/24.[10] At trial, Appellant renewed his objection to the 2024 photos. *See* N.T., 7/1/25, at 24. Before ruling on the objection, the trial court directed Meek's counsel to lay a foundation for the photos through Meek's testimony. *Id.* Meek testified that the condition of the siding continues to deteriorate; the siding looks "worse now" than it did in the 2018 photos; and the 2024 photos depict additional siding "that fell off[.]" *Id.* at 25-26. Following this testimony, the trial court overruled Appellant's objection and admitted the 2024 photos. *Id.* at 26.

We discern no abuse of discretion in the trial court's decision to admit the 2024 photos. Appellant advances no grounds for excluding the photos apart from their alleged irrelevance. *See* Appellant's Brief at 17-18. We agree with Meek that the photos were relevant to the quality of Appellant's workmanship and the repairs needed to remedy the siding's condition. *See* Meek's Brief at 20-21. We further agree with the trial court that Appellant's arguments address the weight of the evidence, not its admissibility. *See* Order, 6/17/24. Appellant's third and final issue therefore merits no relief.

Judgment affirmed.

---

[10] The trial court did not address this issue in its Rule 1925(a) opinion. *See generally* Trial Court Opinion, 9/23/25.

- 21 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

3/25/2026